OPINION
Defendant-Appellants, Kirby's Tire Recycling, Inc., Doris Kirby, Rebecca Williams, and Donald Williams (collectively "Appellants"), appeal a decision from the Wyandot Common Pleas Court finding them in contempt of court for failing to comply with agreed injunctive orders in relation to their maintenance of a scrap tire facility. On appeal, Appellants contend that the terms of the orders were insurmountable and that they lacked the finances to comply therewith; however, because they failed to make meaningful efforts towards compliance or produce evidence supporting their contentions, we find no abuse of discretion in the trial court's determination.
Facts and procedural history relevant to issues raised on appeal are as follows. Since the early 1960s, Kirby's Tire Recycling, Inc. ("Kirby") has accumulated scrap tires at its approximately one hundred-acre facility outside of Sycamore, Ohio. The corporation is owned and operated by Doris Kirby and her daughter and son-in-law, Rebecca and Donald Williams. The tires on the property were accepted for a fee, and estimates of the number of tires on the property range from fifteen to twenty million, making it the largest scrap tire facility in the state.
While environmental regulations had not been enacted when Kirby was established, regulations involving scrap tires and solid waste have been in effect for a significant period of time and are applicable to the facility. On June 13, 1997, at the request of the Ohio Environmental Protection Agency ("EPA"), the Attorney General ("the State") filed a complaint against Appellants in the Wyandot County Common Pleas Court for a preliminary and permanent injunction, civil penalties, nuisance abatement, and other relief. Within the complaint, the State alleged environmental regulation violations and that Kirby posed an imminent threat to the public health.
On July 17, 1997, the parties filed a Preliminary Injunction and Consent Order ("PICO"), wherein Appellants agreed to shred or bale all incoming tires and remove an equivalent weight of tires within seventy-two hours, remove a net five thousand passenger tire equivalents per day, maintain fifty-foot fire lanes between tire piles, clear designated large tire piles, maintain and submit monthly incoming and outgoing tire logs, institute mosquito control, provide twenty-four-hour on-site security, limit access for incoming vehicles to one hundred feet east of their existing processing building, comply with shipping documentation requirements, and prohibit expansion of the existing tire storage area. Thereafter, the PICO was amended with the consent of the parties on October 16, 1997. The Amended Preliminary Injunction and Consent Order ("APICO") added a specific tire pile for removal and extended the limit for incoming vehicles on the property.
Subsequently, on July 15, 1998, the State filed charges seeking a finding of contempt, alleging several violations of the PICO and APICO. In response, the parties entered into written stipulations for the court's consideration, which, with Appellants' consent, culminated in the court's September 18, 1998 Agreed Judgment Entry Finding Violations and Order ("agreed entry"). Therein, the trial court noted multiple violations of the PICO and APICO, including the failure to remove tires as directed, the failure to create and maintain adequate fire lanes, and the failure to reduce the size of tire piles. As a result, the court ordered Appellants to cease accepting tires until they complied with the PICO and APICO, to make written status reports to the court every sixty days setting out their efforts to comply with all orders of the court, to provide monthly reports to the court disclosing all bank and credit card statements as well as an accounting of all transactions in excess of two-hundred dollars, to not transfer or expend corporate assets unless required to comply with the court's orders, and other miscellaneous conditions, such as allowing EPA agents on site to monitor compliance.
On August 21, 1999, a fire occurred at the facility. An estimated five million tires burned during the four days it took to control the fire. Millions of dollars of public money were spent in fighting the fire, including more than two millions dollars for treatment of water run-off contaminated by the by- products of the burning tires.
In compliance with the most recent agreed entry, Appellants filed two status reports during approximately the first 120 days after the September 18, 1998 agreed entry. Thereafter, no status reports were filed over a period in excess of two years: on April 27, 2001, three days prior to the subject contempt hearing, Appellants submitted a third status report. Moreover, after the agreed entry was filed, the EPA sent numerous notices to Appellants indicating their lack of compliance with court orders, including their failure to comply with the financial reporting requirements and the orders contained in the PICO and APICO. Upon continued noncompliance, the State filed its second charge of contempt for violating the terms of the PICO, APICO, and agreed entry. A three-day hearing was held on the motions, beginning May 1, 2001.
On September 24, 2001, the trial court found Appellants guilty of contempt, citing numerous violations of the prior court orders. Appellants were each fined $250 and Doris, Rebecca, and Donald were sentenced to thirty days in jail; however, the fines and jail terms were suspended upon compliance with three conditions: (1) that Appellants place proceeds from sales of Kirby's assets into a constructive trust to be used by the State for remediation of the facility; (2) that Appellants each provide, within thirty days, complete financial statements, a complete accounting of all Kirby assets sold, and a record of all assets in excess of two hundred dollars "acquired, transferred or otherwise encumbered" by Appellants since the agreed entry, and; (3) that Appellants comply with the PICO, APICO, and agreed entry "to the extent each * * * has the ability to comply[,] * * * even if each is only able to contribute some labor or other skill to assist in the clean-up of this site."
The execution of the trial court's judgment was stayed by this Court upon Appellants' motion. And from the trial court's finding of contempt, Appellants appeal asserting seven assignments for our review. Because issues and arguments presented in assignments three, four, and six are interrelated, we have elected to address them simultaneously. Moreover, since the arguments presented herein all relate to the trial court's finding of contempt, we will begin our analysis by setting forth the requisite standard of review.
 Standard of Review
Contempt is a disregard of, or disobedience to, an order or command of judicial authority.[1] To support a finding of contempt, the trial court must find clear and convincing evidence that the alleged act or failure to act occurred.[2] Clear and convincing evidence is evidence that will impart in the trier of fact a firm belief or conviction as to the facts sought to be established.[3] Clear and convincing evidence is considered a higher degree of proof than a preponderance of the evidence, the standard typically used in civil cases, but less than the beyond a reasonable doubt standard utilized in criminal cases.[4] When reviewing a trial court's finding of contempt, appellate courts apply an abuse of discretion standard.[5] An abuse of discretion implies that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable.[6]
 Assignment of Error I
"The character of the trial court's contempt citation renders it criminal and not civil and contrary to law."
Contempt actions are classified as either criminal or civil in nature.[7] "While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment."[8] Thus, the pertinent test is "what does the court primarily seek to accomplish by imposing sentence?"[9]
Civil contempt sanctions are designed for remedial or coercive purposes and are for the benefit of the complainant.[10]
Under civil contempt, prison sentences are usually conditional, affording the contemnors an opportunity to purge themselves of contempt.[11]
Herein, Appellants contend that because the trial court imposed a jail term and fine upon them, without allowing them the opportunity to purge, the finding of contempt was transformed from civil to criminal contempt. However, the imposition of Appellants' punishment was conditioned upon the three things: (1) that Appellants place proceeds from sales of Kirby assets into a constructive trust to be used by the State for remediation of the facility; (2) that Appellants each provide, within thirty days, complete financial statements, a complete accounting of all Kirby assets sold, and a record of all assets in excess of two hundred dollars "acquired, transferred or otherwise encumbered" by Appellants since the agreed entry, and; (3) that Appellants comply with the PICO, APICO, and agreed entry "to the extent each * * * has the ability to comply[,] * * * even if each is only able to contribute some labor or other skill to assist in the clean-up of this site." Consequently, based upon its conditional nature, we find that the trial court's decision was intended to coerce Appellants into taking an active role in the remediation of their tire facility and not to impose criminal punishment.
Alternatively, Appellants argue that the conditions imposed were impossible for them to achieve because they were unable to remove tires from the site. While we acknowledge that a trial court abuses its discretion in ordering purge conditions that are unreasonable or where compliance is impossible,[12] the condition herein relating to removal of tires is limited to the extent that each Appellant has the ability to comply; the accommodating language utilized by the trial court is reasonably couched to permit and encourage compliance. Accordingly, we are unable to find that performance of these provisions was impossible.
As such, Appellants' first assignment of error is overruled.
 Assignment of Error II
"The judgment in contempt is contrary to law in that the preliminary injunctions found to have been violated had been superseded by the Judgment Entry of September 18, 1998."
Appellants maintain the trial court's finding of contempt for disregarding the mandates of the PICO and APICO was erroneous because the agreed entry replaced the requirements contained therein. Despite Appellants' contention, a plain reading of the agreed entry reveals that it was meant to supplement the prior orders, not supercede them. This is most evident by the court's use of the following language in various provisions:
 "A. The Defendants shall immediately cease accepting incoming tires until such time as (i) the Defendants have complied with all requirements of the PICO and APICO from July 9, 1997, through the entry date of this order * * *;
"* * *
 "I. The Defendants shall make written status reports to the Court every sixty (60) days setting out their efforts to comply with the terms of this Order and the PICO and APICO;
 "J. * * * The Defendants may present to the Court a plan for complying with the terms of the PICO and APICO * * *."
Accordingly, we find no merit to Appellants' second assignment of error, and it is overruled.
 Assignment of Error III
"The judgment is contrary to law in failing to recognize that the J.E. conditioned duties on "to the extent that funds are available."
 Assignment of Error IV
"The judgment is contrary to law because the court failed to require proof beyond a reasonable doubt, or even by clear and convincing evidence as to each defendant, that funds were available to defendants or otherwise."
 Assignment of Error VI
"The trial court failed to recognize the impossibility of compliance by defendants, given the lack of sufficient funds."
Within Appellants' third, fourth, and fifth assignments of error, they allege the trial court erred by not finding that compliance with its prior orders was conditioned upon their availability of funds. Appellants further contend that compliance with the court's orders was impossible due to their depleted finances, thus precluding a finding of contempt. Because each of these assignments of error relate to Appellants' financial ability, we will first outline the evidence adduced in relation thereto.
Despite being ordered by the trial court to submit monthly disclosures of all transactions for amounts in excess of two hundred dollars and all bank and credit card statements, no reports, aside from a report filed three days before the contempt hearing, have been filed since October 30, 1998. In addition, testimony at the hearing reveals that since February 1999, Appellants admit to having sold Kirby owned assets totaling over $230,000 and that none of the proceeds have been utilized to comply with the court's prior orders. Moreover, the evidence indicates that a Kirby owned railroad spur was sold for $5,600 but was not deposited in the corporate account. Testimony also shows that multiple pieces of equipment listed in Appellants' February 1998 Permit to Install Application are no longer located at the facility and that Appellants made at least one verified cash sale for equipment without providing a receipt to the purchaser.
Rebecca testified at the contempt hearing that when she would make deposits into the corporate account a few select bills and expenses would be paid, and the remainder of the deposit would be withdrawn in the form of a cashier's check. Notably, Rebecca, Donald, and Doris each received three paychecks within eight days in September 1999. Moreover, while Rebecca testified that she has not worked at the facility since before the August 1999 fire, she admitted to receiving paychecks from Kirby through January 7, 2000. Other family members, including Rebecca and Donald's children, also received paychecks during this time.
Charges of contempt may be defended against by claiming an impossibility of performance;[13] however, the party seeking to establish the defense of impossibility bears the burden of satisfying the court by a preponderance of the evidence that the failure to obey was due to an inability to render obedience.[14]
In this instance, Appellants have failed to submit complete financial data for the years encompassing this lawsuit, and the information that has been produced reveals thousands of dollars remaining unaccounted for. Considering this lack of evidentiary support in light of Appellants' failure for over two years to attempt at least minimal fulfillment of the court's orders, including those requiring little to no money, such as the reporting requirements, their consent to three orders mandating compliance, and their burden of establishing impossibility, we cannot say that the trial court abused its discretion in failing to find that compliance was impossible.
Appellants alternatively claim that their compliance with the agreed entry was largely conditioned upon the availability of funds. In the agreed entry, the trial court, in two of ten provisions, ordered:
 "B. To the extent that funds are available, the Defendants shall not transfer or expend any assets of Kirby's Tire Recycling, Inc., except for those specifically required to comply with the terms of this Order or to maintain the buildings and equipment at the facility. * * *.
"* * *
 "D. To the extent that funds are available, the Defendants shall pay to maintain security protection at the Kirby facility, twenty-four hours per day, seven days a week * * *."
We agree with the trial court that these provisions did not obviate Appellants' need to comply with the terms of the PICO, APICO, and agreed entry unless funds were available. Moreover, even if the provisions were construed to be consistent with Appellants' construction, the evidence outlined above and foregoing discussion illustrate their failure to satisfy their burden of proving that they lacked sufficient funds to make even minimal, meaningful attempts at compliance.
For these reasons, Appellants' third, fourth, and sixth assignments are overruled.
 Assignment of Error V
"The failure of Defendants to continue the reporting required in the judgment entry was not contemptuous as a matter of law."
Pursuant to the agreed judgment entry, Appellants were ordered to file monthly reports to the court "disclosing all statements from all bank and credit card accounts, as well as an accounting of all cash or other transactions in excess of $200.00" and, as mentioned above, to file status reports every sixty days informing the court of their efforts to comply with the PICO, APICO, and the agreed entry. Within their fifth assignment of error, Appellants claim that their failure to comply with these orders did not rise to the level of willful disobedience, that it was a de minimis violation of the court's order, and that it was not completed because of their reliance upon an alleged agreement between their counsel and State officials.
The Ohio Supreme Court has held that "proof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt."[15] Intent is not a necessary element for a finding of civil contempt, and "[i]t is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result."[16] As such, Appellants' arguments that they did not willfully disobey the court's orders are without merit.
Appellants further contend that their failure to comply with the reporting requirements was based upon their reliance upon an agreement between their former counsel and the State. The only evidence of such an agreement, however, is reflected in the testimony of Appellants' former counsel, who could not definitively recall the alleged agreement and admitted awareness of the State's ongoing concern regarding these matters. Additionally, the State produced a letter supporting its continued concern with Appellants' financial tracking procedures. Because the weight to be afforded evidence and witness credibility are matters primarily reserved for the trier of facts, the trial court was free give more credence to the State's testimony and evidence.[17]
Furthermore, because there exists competent, credible evidence supporting its judgment and findings of fact, we are not willing to substitute our judgment for that of the trial court.[18]
In response to Appellants' contention that their failure to report was merely a de minimis violation of the court's order, the trial court explained the import of the reporting orders: these requirements were established to "keep the parties apprised of Defendants' abilities to meet the orders and the resources [they] * * * could devote to such an enterprise." Moreover, the trial court stated that these orders focused on Appellants' assets and finances in order to monitor and ensure they utilized corporate monies to "assist in correcting a problem [they] * * * created and perpetuated." In light of the trial court's rationale, the aforementioned evidence relating to Appellants' financial practices, Appellants' continued failure to file a status reports, and their failure to file monthly financial reports, this Court is cannot determine that the trial court abused its discretion in finding that Appellants' lack of compliance constituted contempt.
Appellants' fifth assignment of error is, therefore, overruled.
 Assignment of Error VII
"The trial court abused its discretion in not applying the law of the case doctrine to the prior orders of the court."
Appellants attempt to argue that because the trial court did not hold them in contempt in its agreed entry for noncompliance, the law-of-the-case-doctrine should apply to preclude a contempt sanction in any subsequent decision. However, Appellants' contention is misplaced. First, we reiterate that a finding of contempt is well within the trial court's discretion. Moreover, the law-of-the-case doctrine applies to judgments of reviewing courts;[19] accordingly, under the doctrine, a reviewing court's decision in a case remains the law for that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing court levels.[20] In other words, the decision of an appellate court in a prior appeal will ordinarily be followed in a later appeal in the same case and court.[21] Therefore, we find no merit to Appellants' arguments in this regard.
For these reasons, Appellants' seventh assignment of error is overruled.
Having found no error prejudicial to Appellants herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
SHAW, P.J., and HADLEY, J., concur.
[1] Parker v. Elsass (June 27, 2002), Franklin App. Nos. 01AP-1306, 02AP-15, 02AP-144, 2002-Ohio-3340, at ¶ 32, citing State v. Flinn
(1982), 7 Ohio App.3d 294, 295.
[2] Id. at ¶ 35.
[3] Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122.
[4] Parker, supra, at ¶ 35.
[5] Whitman v. Whitman-Norton (Nov. 20, 2000), Hancock App. No. 5-2000-10, 2000-Ohio-1935, citing State ex rel. Ventrone v. Birkel
(1981), 65 Ohio St.2d 10.
[6] Id., citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
[7] Id., citing Federal Land Bank Assn. of Fostoria v. Walton (1995),99 Ohio App.3d 729, 733, citing Denovchek v. Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16.
[8] Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253.
[9] State ex rel. Corn v. Russo (2001), 90 Ohio St.3d 551, 554-55,2001-Ohio-15, quoting Shillitani v. United States (1966), 384 U.S. 364,370.
[10] State v. Birch (July 24, 2002), Summit App. No. CR 01 08 2079, 2002-Ohio-3734, at ¶ 11, citing Corn, 90 Ohio St.3d at 555.
[11] Id.
[12] Burchett v. Miller (1997), 123 Ohio App.3d 550, 552.
[13] See, e.g., Monastra v. Monastra (Oct. 5, 2000), Cuyahoga App. No. D-182577, citing Courtney v. Courtney (1984), 16 Ohio App.3d 329.
[14] In re Purola (1991), 73 Ohio App.3d 306, 313-14; Lawrencev. Lawrence (April 16, 1993), Lucas App. No. H-92-036.
[15] Pugh v. Pugh (1984), 15 Ohio St.3d 136, paragraph one of the syllabus.
[16] Id. at 140, quoting Pedone v. Pedone (1983), 11 Ohio App.3d 164,165.
[17] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80.
[18] Seasons Coal Co., 10 Ohio St.3d at 80.
[19] State ex rel. Baker v. State Personnel Bd. of Review (1999),85 Ohio St.3d 640, 642; Nolan v. Nolan (1984), 11 Ohio St.3d 1, 4.
[20] White v. Goodman (Jan. 4, 2001), Marion App. No. 9-2000-63, citingBaker, 85 Ohio St.3d at 642.
[21] Nolan, 11 Ohio St.3d at 4.