DECISION.
This appeal is another sad chapter in a litigious struggle for the control of a little girl, Danielle, who is now ten years old. We have seen the principals in this case twice before,[1] and we hope, no matter how unlikely it may be, that in the future the parties will be able to work together in Danielle's best interests, so that this will be the final chapter we are called upon to review.
We are compelled to state initially that, after a thorough review of the record, we empathize with the juvenile court, the magistrate, the guardian ad litem, and appellee Alice Hempen, Danielle's custodian. The appellants, the Baileys, Danielle's natural parents, have generated pro se motions and other associated correspondence in the record that are increasingly alarming. Documents are being filed at a frenzied pace. They often lack legal foundation and are accusatory, inflammatory, and defiant in tone. And, most recently, they have taken an apparently desperate turn, with outrageous, unsubstantiated allegations that Danielle's custodian is abusing her.
But until the Baileys have been properly adjudicated vexatious litigators, the juvenile court may not impede their access by routing their frequent complaints about Danielle's care through her guardian ad litem or through a child protection agency. The court has not made such an adjudication, so we offer no opinion today as to whether the Baileys' behavior might qualify as vexatious litigation. But each time the Baileys file a frivolous motion or demonstrate contempt for the court's visitation orders, the court certainly may hold the Baileys responsible for the consequences of their conduct.
This case began about six years ago when Danielle was just four. The Baileys were admittedly both suffering from a combination of physical, mental, and marital problems that resulted in the removal of Danielle from their home. Temporary custody was awarded to Alice Hempen, who was unrelated to either Bailey, but was a friend of Linda Bailey's. The Baileys were to have been able to visit Danielle regularly.
Almost immediately, the Baileys and Hempen began to accuse each other of violating the court's visitation orders and of other conduct not in Danielle's best interests. But once the Baileys had reconciled, they also set out to prove to the court that Danielle should be returned to them. The court determined that it was in Danielle's best interest to stay with Hempen.
Hempen then sought to curtail and to impose other restrictions on Danielle's visits with her parents, while the Baileys simultaneously sought to expand and more freely exercise their time with Danielle. This internecine legal wrangling escalated significantly when Hempen asserted, and the juvenile court found, that inappropriate touching had occurred between Danielle and her parents during a visit. We affirmed the court's emergency suspension of visitation, the appointment of a guardian ad litem, and the plan to slowly and cautiously implement independently supervised visitation.
The record indicates that the Baileys have since redoubled their pro se legal efforts. The juvenile court has been flooded with motions aimed at gaining as much control over Danielle as possible. Ironically, at the same time, the Baileys have demonstrated a lack of judgment during their supervised time with Danielle that is, to say the least, counterproductive of their efforts to regain custody.
On two separate occasions, one of which was supposed to have been independently supervised, Danielle, then just eight years old, was given alcohol by the Baileys. They claimed that the amount was insignificant, but there was sufficient alcohol in the child to have been detected by a test at Children's Hospital the day after the consumption occurred.
Next, because of concerns over past inappropriate touching and the more recently questioned effectiveness of the visit supervisor, who claimed that he had not known that Danielle had consumed alcohol while he was supposed to be watching her, the magistrate clearly told the Baileys that they were not to take Danielle swimming unless the guardian ad litem was present. When the guardian ad litem notified them that he would not be available to accompany them to a local amusement park over the weekend, Linda Bailey responded venomously and defiantly, in multiple faxes, writing in part that "[w]e are taking [Danielle] swimming. Period." And they did.
But the record also reflects that the Baileys attempted to convince Danielle, as well as the same less-than-observant independent visit supervisor who had missed Danielle's alcohol consumption, to lie and to say that they had not been swimming. When it was discovered that Danielle had been swimming, the Baileys still protested that they had not defied the court's clear directive. First, they claimed that because they had not been in the water with Danielle, they had not been swimming with her. Second, they responded that since Danielle had been floating in an innertube, she had not really been swimming. Finally, they protested that because they were going to file objections to the magistrate's decision to permit swimming only in the presence of the guardian ad litem, they assumed that the order was suspended, even though their objections had not been filed at the time. This begs the question as to why their elaborate denials and minimizations were necessary at all.
In any event, the juvenile court eventually adopted much of the magistrate's decision concerning these multiple incidents. On appeal, the Baileys assign three errors to the court's decision. They object to being required to take their complaints concerning Danielle's care to other authorities that the court. They also argue that the court erred by ordering them to pay a portion of Hempen's attorney fees, and that the court erroneously granted Hempen's emergency motion to suspend visitation. We sustain the Baileys' first assignment of error, but overrule the second and third.
The court concluded that "a return of custody cannot be granted where even unsupervised visits remain detrimental to the child." But while the court relented from a previous order restricting the Baileys from petitioning the court for changes in custody or visitation, a restriction remained. The court explained that it would "not consider any filings of the parents regarding the care given by the custodian, as filings in this area are to be made by the child protection agencies or GAL in place." The Baileys protest that, absent the appropriate procedure, the court could not restrict their access to the court system. We sustain the Bailey's first assignment of error.
As we have previously held, it is a public-policy imperative that "[t]he courthouse door must be open to the people of Ohio."[2] But there is a statutory exception. R.C. 2323.52, the "vexatious litigator" statute, provides the appropriate procedure whereby parties who persistently abuse the civil litigation process may be restricted in their access to the courts. We hold today that a court must follow the procedures of R.C. 2323.52 to restrict certain parties from bringing before it matters otherwise within its jurisdiction. Since those procedures were not followed in this case, we sustain the Bailey's first assignment of error and remove the restriction imposed by the juvenile court.
But the Baileys should not read the foregoing as absolving them from the consequences of their conduct. In this case, the juvenile court properly ruled that the Baileys' willful disobedience of the court's visitation order required that they compensate Hempen for her legal expenses in bringing the matter before the court. The award was valid whether it was based on the court's statutory authority to provide redress to a party affected by frivolous conduct,[3] the court's inherent power to address bad-faith conduct,[4] or the court's interest in compelling obedience to its orders.[5] The award was not somehow made invalid because the magistrate was directed by the court to consider the issue. We thus overrule the Baileys' second assignment of error and sustain the award of attorney fees.
Finally, the Baileys argue that the court erred by granting Hempen's emergency motion to suspend visitation. They do not argue that the circumstances did not warrant such a suspension. Instead, they argue that the court was without authority to grant the motion because it was labeled an "emergency" motion, and because an ex parte emergency motion may only be granted under R.C. 2151.33, which is arguably inapplicable. The problem with the Baileys' argument is that while Hempen's motion was labeled an emergency motion, it was actually treated as an emergency only to the extent that the court scheduled a hearing on it as quickly as possible. In fact, the record demonstrates that all parties were present and were given an ample opportunity to be heard before the magistrate ruled on the motion.
Because Hempen's motion was heard with the Baileys present, it was not an ex parte emergency order within the meaning of R.C. 2151.33. We thus overrule the Baileys' third assignment of error and uphold the court's suspension of visitation.
To summarize, we empathize with the court's desire to maximize judicial economy by placing the responsibility for triaging the Baileys' voluminous claims through the guardian ad litem or a child protection agency. We even believe that this approach might be better for the Baileys than for them to receive increasingly stiffer sanctions for behavior that they may be unable to control. But, in order to limit their access to the juvenile court with respect to the care their daughter is receiving from her custodian, they must be proven vexatious litigators.
We overrule the Baileys' second and third assignment of error and affirm the court's award of attorney fees and its decision to suspend visitation. We vacate the restrictions on filings by the Baileys
Affirmed in part and reversed in part.
Hildebrandt and Winkler, JJ., concur.
[1] See In re Bailey (Nov. 6, 1998), 1st Dist. No. C-970871; Inre Bailey (May 2, 2001), 1st Dist. No. C-990528.
[2] See Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534,544, 688 N.E.2d 604.
[3] See R.C. 2323.51
[4] See Curtis v. Curtis (2000), 140 Ohio App.3d 812, 815,749 N.E.2d 772.
[5] See R.C. 2705.02(A); State ex rel. Corn v. Russo, 90 Ohio St.3d 551,555, 2001-Ohio-15, 740 N.E.2d 265.