**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. McGirr v. Winkler,* **Slip Opinion No. 2017-Ohio-8046.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8046

[THE STATE EX REL.] MCGIRR *v.* WINKLER, JUDGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. McGirr v. Winkler,* **Slip Opinion No. 2017-Ohio-8046.]**

*Prohibition—Prohibition is a proper remedy to prevent vexatious abuse of process—Writ granted.*

(No. 2017-0474—Submitted May 16, 2017—Decided October 5, 2017.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} This case is the latest chapter in the ongoing campaign by disbarred attorney Stanley M. Chesley to shelter assets from his judgment creditors. In this original action, Connie McGirr and 18 other judgment creditors ("the creditors") seek a writ of prohibition to halt an action for an assignment for the benefit of creditors ("the ABC action") pending before respondent, Hamilton County Probate Judge Ralph Winkler.

**{¶ 2}** Judge Winkler has filed a motion to dismiss the petition. In addition, intervening respondent, Eric W. Goering, as assignee of Waite, Schneider, Bayless & Chesley Co., L.P.A. ("WSBC"), has filed a motion for judgment on the pleadings. The creditors have filed a motion to strike a memorandum filed by Goering in support of Judge Winkler's motion to dismiss. And lastly, Goering has filed a motion to clarify or modify this court's stay order.

**{¶ 3}** For the reasons set forth herein, we deny the motions and grant a peremptory writ of prohibition.

*Background*[1]

**{¶ 4}** In December 2004, the creditors filed a lawsuit alleging that Chesley and three other attorneys had stolen millions of dollars in settlement funds while representing them. On August 1, 2014, the Kentucky trial court ruled that Chesley was jointly and severally liable for $42 million. The Kentucky Court of Appeals affirmed the judgment in all respects. *Chesley v. Abbott*, Ky.App. Nos. 2014-CA-001725-MR, 2014-CA-001900-MR, and 2014-CA-001984-MR, 2017 WL 943973 (Mar. 10, 2017).

**{¶ 5}** On March 21, 2013, the Supreme Court of Kentucky permanently disbarred Chesley for his conduct in the underlying representation. *Kentucky Bar Assn. v. Chesley*, 393 S.W.3d 584 (Ky.2013). Before he was permanently disbarred, Chesley was the president and sole shareholder of WSBC. On April 15, 2013, Chesley executed a wind-up agreement, pursuant to which Thomas Rehme agreed to hold the shares of WSBC in trust for the purpose of winding up operations.

---

[1] For the purpose of deciding Judge Winkler's motion to dismiss, we are required to accept all the factual allegations in the complaint as true. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). With respect to Goering's motion for judgment on the pleadings, we consider the complaint and the answer. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996). In deciding Goering's motion, we have relied only on allegations that Goering has admitted or not contested.

{¶ 6} On June 23, 2015, Boone County Circuit Court Judge James R. Schrand ordered Chesley to transfer his beneficial interest in the WSBC shares to the creditors. Chesley has not transferred the shares to the creditors.

{¶ 7} On August 30, 2016, Rehme incorporated "Thomas F. Rehme, Trustee, Inc." as an Ohio for-profit corporation. Two days later, on September 1, 2016, he transferred the WSBC shares to the new corporation. On September 9, the corporation executed a "Deed of Assignment for the Benefit of Creditors" transferring the WSBC shares to Goering. On September 12, 2016, Rehme filed the deed in probate court, commencing the ABC action.

{¶ 8} On April 7, 2017, after Judge Winkler denied their motion to dismiss, the creditors commenced the present action for a writ of prohibition. At the same time, they filed a motion for an emergency stay of the ABC action.

{¶ 9} On April 12, 2017, Goering, as the assignee of WSBC, filed a motion in this court for leave to intervene. The next day, Judge Winkler filed a motion to dismiss the prohibition case. On April 17, 2017, this court granted the emergency stay and also granted Goering's motion for leave to intervene. 148 Ohio St.3d 1439, 2017-Ohio-1411, 72 N.E.3d 653.

{¶ 10} On April 24, 2017, the same day the creditors filed their brief in opposition to the motion to dismiss, Goering filed a pleading captioned "Memorandum in Support of Judge Winkler's Motion to Dismiss." Then, four days later, Goering filed an answer and a separate motion for judgment on the pleadings. The creditors responded with a motion to strike Goering's memorandum supporting Judge Winkler's motion. Lastly, on May 4, 2017, Goering filed an emergency motion for clarification or modification of this court's stay order.

*The motion to strike*

{¶ 11} S.Ct.Prac.R. 4.01(B) provides, "If a party files a motion with the Supreme Court, *any other party* may file a response to the motion within ten days from the date the motion is filed, unless otherwise provided in these rules or by

order of the Supreme Court." (Emphasis added.) Thus, the Rules of Practice expressly authorized Goering to file his memorandum in support of Judge Winkler's motion to dismiss, and it was filed within ten days of the motion. We therefore deny the motion to strike.

*The motions to dismiss and for judgment on the pleadings*

{¶ 12} In order to dismiss a complaint under Civ.R. 12(B) for failure to state a claim, it must appear to the court that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Likewise, a Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 582, 752 N.E.2d 267 (2001). In this case, the two motions present the same question of law: whether Judge Winkler lacks jurisdiction to preside over the ABC action.

{¶ 13} There are three elements necessary for a writ of prohibition to issue: the actual or imminent exercise of judicial power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. However, if the absence of jurisdiction is patent and unambiguous, then the petitioner need not establish the third prong, the lack of an adequate remedy at law. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15. "Absent a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging the court's jurisdiction has an adequate remedy at law by appeal." *State ex rel. Enyart v. O'Neill*, 71 Ohio St.3d 655, 656, 646 N.E.2d 1110 (1995).

{¶ 14} In this case, the first element is not in dispute: Judge Winkler is plainly exercising, or is about to exercise, judicial power. *State ex rel. Vanni v.*

*McMonagle*, 137 Ohio St.3d 568, 2013-Ohio-5187, 2 N.E.3d 243, ¶ 7. Judge Winkler and Goering, in their respective motions, contend that the second element is likewise not in dispute, because Judge Winkler has clear statutory jurisdiction over the ABC action. We agree.

{¶ 15} The Ohio Revised Code establishes a comprehensive scheme governing voluntary assignments for the benefit of creditors, under the jurisdiction of the probate court. R.C. Chapter 1313. The probate court assumes jurisdiction upon the filing of the transfer deed (so long as the filing occurs within ten days of its execution). R.C. 1313.01. The probate court then has the authority to, among other things, appoint and remove trustees, R.C. 1313.03, remove an assignee, 1313.07, appoint appraisers, 1313.15, and order the private sale of property, 1313.24. And as R.C. 2101.24(A)(2)(a) and (b) make clear, the probate court's jurisdiction over a particular subject matter is exclusive when the Revised Code expressly confers jurisdiction over that subject matter upon the probate court and not upon any other court or agency.

{¶ 16} The evidence establishes that the transfer deed from the trust corporation to Goering was filed with the probate court within ten days of its execution, which is all that is necessary to vest the probate court with jurisdiction.

{¶ 17} The creditors challenge Judge Winkler's jurisdiction on three grounds. First, they contend that Judge Winkler lacks jurisdiction because Judge Schrand in Kentucky has already declared the wind-up agreement to be a sham and ordered Chesley to transfer his interest in WSBC to the creditors. But even assuming that it applies, res judicata is an affirmative defense the validity of which a second tribunal has jurisdiction to decide. *State ex rel. Lipinski v. Cuyahoga Cty. Common Pleas Court, Probate Div.*, 74 Ohio St.3d 19, 20-21, 655 N.E.2d 1303 (1995); *State ex rel. Flower v. Rocker*, 52 Ohio St.2d 160, 162, 370 N.E.2d 479 (1977).

**{¶ 18}** Second, the creditors argue that permitting Judge Winkler to proceed with liquidating WSBC despite Judge Schrand's orders would violate the Full Faith and Credit Clause, Article IV, Section 1 of the U.S. Constitution. However, we agree with the Supreme Court of Colorado that an assertion of finality based on the Full Faith and Credit Clause is "in effect a plea of res judicata based upon a foreign judgment" and that the second court has jurisdiction to decide the applicability of that plea. *Leonhart v. Thirteenth Judicial Dist. Court, Sedgwick Cty.*, 138 Colo., 1, 6-8, 329 P.2d 781 (1958).

**{¶ 19}** Third, the creditors argue that the ABC action is an "end run" around fraudulent-transfer litigation already pending before a federal court and the federal case should take precedence. The jurisdictional-priority rule provides that as between *state* courts of concurrent jurisdiction, the tribunal whose power is first invoked acquires exclusive jurisdiction to adjudicate the whole issue and settle the rights of the parties. *State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 9. The rule does not apply to proceedings in federal court. *Wellman v. Salt Creek Valley Bank*, 10th Dist. Franklin No. 06AP-177, 2006-Ohio-4718, ¶ 8.

**{¶ 20}** In sum, we conclude that Judge Winkler does not patently and obviously lack jurisdiction over the ABC action. The creditors have an adequate remedy at law by way of appeal from any order Judge Winkler may issue, including an order denying the motion to dismiss for lack of jurisdiction. However, our analysis does not end there.

**{¶ 21}** Prohibition is also a proper remedy to prevent vexatious abuse of process. *See Commercial Savs. Bank v. Wyandot Cty. Court of Common Pleas*, 35 Ohio St.3d 192, 519 N.E.2d 647 (1988); *State ex rel. Stark v. Summit Cty. Court of Common Pleas*, 31 Ohio St.3d 324, 511 N.E.2d 115 (1987). In our judgment, the conduct of Chesley and WSBC warrants this extraordinary relief.

**{¶ 22}** Goering and WSBC admit the existence of the judgment against Chesley, Judge Schrand's transfer order, and Chesley's noncompliance with that order. And while disputing the substance of the order, they concede the authenticity of the September 25, 2015 judgment entry in which Judge Schrand found that Chesley continues to maintain control over WSBC, declared the wind-up agreement "a sham," and found that Chesley

> is utilizing WSBC and its existence during what is supposed to be a wind-up period, to prevent Plaintiffs, his judgment creditors, from executing on their Judgment. The Court finds he is taking action to render himself insolvent while directing assets to WSBC, including fees from the Fannie Mae Litigation and tobacco litigation, and the transfer of $59 million from his personal accounts to WSBC.

**{¶ 23}** The record evidence demonstrates a pattern of misuse of the judicial process in Ohio by Chesley and WSBC to obstruct collection efforts and conceal Chesley's ongoing control of WSBC. On February 6, 2017, for example, Hamilton County Visiting Judge Richard A. Niehaus imposed a $10,000 sanction against Chesley for filing frivolous objections to domestication of the Kentucky judgment, objections that were "interposed for the purpose of delay and to cause a needless increase in the cost of litigation."[2] *Abbott v. Chesley*, Hamilton C.P. No. EX1600448, 5 (Feb. 6, 2017).

**{¶ 24}** The record also contains evidence to suggest that the ABC action, ostensibly filed to discharge WSBC's debts, was itself the product of fraud. United States District Court Judge Robert Cleland has imposed a temporary restraining order barring Chesley, Rehme, WSBC, and their agents from taking any actions to

---

[2] Judge Niehaus also levied a $2,500 sanction against Chesley's counsel, Terry Serena.

transfer or distribute WSBC funds. *McGirr v. Rehme*, S.D.Ohio No. 1:16-cv-464 (Sept. 19, 2016). According to Judge Cleland,

> This filing [of the ABC action in probate court] followed Rehme's attempt to transfer all assets of WSBC to a new "Assignee," Mr. Eric Goering. The Court notes that this transfer was without consideration, and that this transfer appears to be with the intent to frustrate the judgment creditors. * * *
>
> It is not lost on the Court that WSBC appears to be forum shopping. The Court finds the timing of this purported transfer particularly troubling, as this filing comes while a motion for preliminary injunction is pending, after a two day hearing, and a motion for leave to amend the complaint to assert new causes of action is also pending.

{¶ 25} Over a year ago, we granted a writ of prohibition to prevent Hamilton County Common Pleas Court Judge Robert Ruehlman from presiding over an action filed by Chesley to prevent collection of the judgment. *State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396. WSBC was a party in that prohibition action and in the underlying trial court litigation. And the record in that case is replete with examples of abusive litigation tactics.

{¶ 26} In the trial court action underlying the *Ruehlman* case, Chesley and WSBC sought declaratory and injunctive relief to prevent the creditors from domesticating or enforcing their Kentucky judgment in Ohio, forms of relief the common pleas court was without jurisdiction to provide. *Id.* at ¶ 64, 80. When the creditors sought to secure their judgment in Kentucky by requesting—and receiving—an order compelling Chesley to transfer his interest in WSBC, Chesley

and WSBC moved to have the creditors' Kentucky counsel held in contempt in Ohio.[3]

{¶ 27} What makes this all the more egregious is that the creditors' attorney, who was named as a defendant in the common pleas case, was licensed in Kentucky but not Ohio and had taken no action to enforce the judgment in Ohio. *Id.* at ¶ 5, 13. It was only after the Kentucky attorney commenced a prohibition action in this court that Chesley and WSBC voluntarily dismissed their claims against her, so that Judge Ruehlman could file a "suggestion of mootness" in the prohibition case. *Id.*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, at ¶ 35.

{¶ 28} On October 19, 2015, Judge Schrand granted a motion for a show-cause order against Chesley and scheduled a contempt hearing for October 29, 2015, expressly commanding Chesley to appear in person. *Id*. at ¶ 38. When Chesley failed to appear, Judge Schrand issued a warrant for his arrest on a charge of contempt for failure to appear. *Id*. Chesley responded by suing Hamilton County Sheriff Jim Neil in the Hamilton County Court of Common Pleas to enjoin him from enforcing the arrest warrant in Ohio. *Id*. at ¶ 39.

{¶ 29} In addition to the conduct described above, we take judicial notice of Chesley and WSBC's actions in a fee-collection action by WSBC against a former client, at which Chesley (not Rehme) appeared as the firm's representative. *See Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 191 F.Supp.3d 743, 746 (S.D.Ohio 2016). Only after approving a settlement and dismissing the case did District Court Judge James Carr learn about the wind-up agreement, the Boone County judgment against Chesley, Judge Schrand's determination that the wind-up agreement was a sham, and Chesley's noncompliance with the order to transfer his interest in WSBC to the judgment creditors. Judge Carr issued a show-cause order,

---

[3] We can consider this document because it was placed into the record by Chesley and WSBC.

writing that " 'I feel tricked, and complicit, albeit unwittingly so, in chicanery, duplicity, and mendacity.' " *Id.*, quoting the show-cause order.

{¶ 30} Judge Carr ultimately granted motions to withdraw the show-cause order. *Id.* However, he was unsparing in his criticism. Of Judge Schrand's finding that the wind-up agreement was a sham, he wrote:

> [T]he Sham Finding casts a bright light on the tenacity with which Chesley has sought, and continues unrelentingly to seek, to retain money that he and his confederates stole from their former client victims.
>
>     * * *
>
>  *Someone* * * * should have told me before trial about the Wind-Up Agreement and Turn-Over Order. Had *someone* told me about those documents, I would not feel that, however unwittingly, I have helped a bandit to escape.

(Emphasis sic.) *Id*., 191 F.Supp.3d at 747, 749-750.

{¶ 31} Finally, we note that Chesley and WSBC have also used the courts of this state to intimidate the creditors by suing them for money damages. *See Chesley v. Probate Estate of Abney*, Hamilton C.P. No. A1602508.

{¶ 32} In *Commercial Savs. Bank*, we recognized that we lack original jurisdiction to issue an injunction to prevent the filing of future abusive lawsuits. 35 Ohio St.3d at 194, 519 N.E.2d 647. But we will issue a writ of prohibition to halt ongoing litigation that is shown to be vexatious. In our judgment, this extraordinary relief is warranted in this case due to its long and egregious litigation history. WSBC has admitted all the essential facts of that history, even as it spins its actions differently.

{¶ 33} We therefore deny the motions to dismiss and for judgment on the pleadings and grant a peremptory writ of prohibition.

*The motion for clarification/modification*

{¶ 34} As previously noted, this court granted an emergency stay of the ABC action on April 17, 2017. 148 Ohio St.3d 1439, 2017-Ohio-1411, 72 N.E.3d 653. On May 4, 2017, Goering filed an "Emergency Motion" to clarify or modify the stay. In the motion, he claims that the stay is preventing him from taking a number of time-sensitive actions to preserve WSBC assets, including:

- Paying the monthly rent on the storage space housing WSBC's client files;

- Paying the storage costs for vehicles owned by WSBC;

- Submitting WSBC's tax returns to the Internal Revenue Service by September 15, 2017;

- Depositing a $500,000 attorney-fee award check and disbursing 10 percent to co-counsel; and

- Pursuing attorney fees in ongoing litigation.

{¶ 35} No modification of this court's stay can override the restraining order imposed by District Court Judge Cleland barring Chesley, Rehme, WSBC, and their agents from taking any actions to transfer or distribute WSBC funds. We therefore deny the motion for modification.

*Conclusion*

{¶ 36} For the reasons stated, we deny the motions to strike, to dismiss, for judgment on the pleadings, and for modification, and we hereby grant a peremptory writ of prohibition barring further proceedings in the ABC action.

Motions denied
and writ granted.

O'CONNOR, C.J., and O'DONNELL, KLATT, and FISCHER, JJ., concur.

DEWINE, J., dissents, with an opinion joined by KENNEDY and FRENCH, JJ.

WILLIAM A. KLATT, J., of the Tenth District Court of Appeals, sitting for O'NEILL, J.

_____

**DEWINE, J., dissenting.**

{¶ 37} No proposition is more fundamental to our writ jurisprudence than this one: an extraordinary writ will not lie when there is an adequate remedy at law. The only exception is that we will issue a writ of prohibition regardless of the existence of an adequate remedy at law when a court patently and unambiguously lacks jurisdiction. It is a set of rules that we have cited over and over again and that we apply in case after case. *See, e.g.*, *State ex rel. Adams v. Gusweiler*, 30 Ohio St.2d 326, 329, 285 N.E.2d 22 (1972); *State ex rel. Lewis v. Moser*, 72 Ohio St.3d 25, 28, 647 N.E.2d 155 (1995); *State ex rel. Durrani v. Ruehlman*, 147 Ohio St.3d 478, 2016-Ohio-7740, 67 N.E.3d 769, ¶ 13, 17.

{¶ 38} The majority concludes that "Judge Winkler does not patently and obviously lack jurisdiction over the ABC action" and that "[t]he creditors have an adequate remedy at law by way of appeal from any order Judge Winkler may issue * * *." Majority opinion at ¶ 20. By our rules, that should end the matter. Yet today, the majority decides that for this case, it will apply different rules. That's too much for me to swallow, so I dissent.

{¶ 39} A writ of prohibition "prevents an inferior court from exceeding its jurisdiction." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). It has long been recognized that a writ of prohibition is " 'to be used with great caution and forbearance for the furtherance of justice, and for securing order and regularity in all the tribunals where there is no other regular and ordinary remedy.' " *State ex rel. Nolan v. ClenDening*, 93 Ohio St. 264, 270, 112 N.E. 1029 (1915), quoting 32 Cyc. 598. The writ is "issued only in cases of necessity arising from the inadequacy of other remedies." *State ex rel. Henry v. Britt*, 67 Ohio St.2d 71, 73, 424 N.E.2d 297 (1981).

**{¶ 40}** Blowing past these restraints, the majority justifies its expansion of the writ of prohibition by citing two cases from the 1980s. In those cases, this court—with no discussion about whether the lower court had exceeded its jurisdiction or whether the relators had an adequate remedy at law—extended the writ of prohibition to stop what it saw as the vexatious conduct of litigants. *Commercial Savs. Bank v. Wyandot Cty. Court of Common Pleas*, 35 Ohio St.3d 192, 519 N.E.2d 647 (1988); *State ex rel. Stark v. Summit Cty. Court of Common Pleas*, 31 Ohio St.3d 324, 511 N.E.2d 115 (1987). Both cases involve facts far different from those at issue here. In the 30 years since their release, we have never relied upon them to issue a writ in a case like this one, where a party had an adequate remedy by way of appeal and the court did not lack jurisdiction.

**{¶ 41}** This court is understandably frustrated with Stanley Chesley's actions in evading payment to his former clients. But it is far from clear that the radical action taken by this court today does anything to help these creditors. The primary obstacle to their collection efforts has been Chesley's 2013 transfer of his beneficial interest in his former law firm, Waite, Schneider, Bayless & Chesley Co., L.P.A. ("WSBC"), to his friend, Thomas Rehme. A fraudulent-transfer action that seeks to recover the assets transferred to Rehme is pending in federal court. The district court has found that the former clients have a likelihood of success on the merits. *McGirr v. Rehme*, S.D.Ohio No. 1:16-cv-464, 2017 WL 1426456, at *5 (Apr. 21, 2017). And significantly, for our purposes, the court has issued an injunction that prevents Rehme, WSBC, Chesley, and their agents and assignees from "assign[ing], disburs[ing], distribut[ing], transfer[ring] or tak[ing] any action related to any asset of WSBC, including money, outside of basic office expenses; [and] negotiat[ing] or enter[ing] into any agreements pertaining to income due WSBC and/or Chesley." *Id.* Thus, by federal-court order, Eric Goering, the assignee of WSBC's assets in the Hamilton County probate-court proceedings, is

barred from taking any action that would dissipate the assets available to creditors while the fraudulent-transfer action is pending. *Id*. at *1, 5.

{¶ 42} All of this makes it particularly troubling that this court would bend its rules so far to issue a writ in this case today. Quite simply, this court's action accomplishes little.

{¶ 43} At the end of the day, what we have here is a court, frustrated by a litigant who won't play by the rules, choosing to respond by ignoring its own rules. Such a response hardly furthers the rule of law.

{¶ 44} Because I believe that consistent with our longstanding principles, the extraordinary writ of prohibition should be reserved for those times when there is no remedy available at law or a court has patently and unambiguously exceeded its jurisdiction, I respectfully dissent.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

_____

Dinsmore & Shohl, L.L.P., and Brian S. Sullivan, for relators.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and James S. Ginocchio and Christian J. Schaefer, Assistant Prosecuting Attorneys, for respondent.

Robbins, Kelly, Patterson & Tucker, L.P.A., Michael A. Galasso, and Jarrod M. Mohler, for intervening respondent, Eric W. Goering.

_____