[This decision has been published in *Ohio Official Reports* at 90 Ohio St.3d 551.]

THE STATE EX REL. CORN ET AL., APPELLEES, *v.* RUSSO, JUDGE, APPELLANT.

[Cite as *State ex rel. Corn v. Russo*, 2001-Ohio-15.]

*Courts—Jurisdiction—Contempt—Dismissal of an underlying civil action does not divest a court of common pleas of jurisdiction to conduct criminal contempt proceedings.*

(No. 00-23—Submitted September 12, 2000—Decided January 17, 2001.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 76730.

————————————

SYLLABUS OF THE COURT

The dismissal of an underlying civil action does not divest a court of common pleas of jurisdiction to conduct criminal contempt proceedings.

————————————

FRANCIS E. SWEENEY, Sr., J.

{¶ 1} This matter comes before this court upon the granting of a writ of prohibition that prohibits respondent from conducting further contempt proceedings in the underlying personal injury lawsuit entitled *Crow v. Dotson*, Cuyahoga C.P. No. CV345899. Since we find that respondent had jurisdiction to conduct criminal contempt proceedings, we reverse the court of appeals and deny the writ of prohibition.

{¶ 2} This action arises from a subpoena issued to relators, Robert C. Corn, M.D., and Highland Musculo-Skeletal Associates, Inc., requesting financial information and related reports concerning Corn's medical/legal consultations.

{¶ 3} Relator Corn, an orthopedic surgeon, was hired by defense counsel in the *Crow* litigation to perform an independent medical examination ("IME") of the plaintiff and to be a medical expert witness. Believing that Corn was biased, in that he earned a substantial amount of income by performing examinations for the defense in personal-injury cases and acting as a defense expert witness, plaintiff's counsel filed a request for production of documents. Plaintiffs asked that Corn

produce all I.R.S. 1099 tax forms received from insurance companies and attorneys for the years 1991-1997, as well as office records, including appointment books, computerized records and billing statements, and IME reports, relating to any IMEs he conducted during those years.

{¶ 4} When those records were not produced, plaintiff's counsel, on July 27, 1998, issued a subpoena, pursuant to Civ.R. 45, to Corn and his professional organization and employees, requiring them to produce the documents. Corn filed a motion to quash the subpoena. Respondent, Judge Nancy Russo, denied the motion to quash on September 4, 1998. In this order, respondent stated that the failure to comply by September 14, 1998, would be deemed contempt of court.

{¶ 5} On September 14, 1998, Corn, through his attorney, responded to the subpoena by letter. Although Corn was able to produce a 1997 calendar containing the names of his patients and approximately one hundred three IME reports from 1996 and 1997, he did not produce the remainder of the requested reports or the 1099 tax forms.

{¶ 6} On September 22, 1998, respondent ordered Corn to appear in court to show cause why he should not be held in contempt for failure to abide by the court's orders regarding production of documents ordered by subpoena.

{¶ 7} A show-cause hearing took place on September 28, 1998. At the hearing, Corn testified that, with the exception of the one calendar produced, he could not produce any other appointment books or calendars prior to 1998. He explained that appointment books are destroyed at the end of the calendar year or every three months, once the file is inactive. With respect to the IME reports sought, Corn also testified that the majority of these reports had been destroyed. Upon cross-examination, he conceded that one of the reasons he destroys these records is to prevent plaintiffs and plaintiffs' attorneys from establishing his financial interest and defense bias in personal injury litigation. Corn also said that he could not produce any 1099 tax forms because he did not have any.

**{¶ 8}** Attorney Robert Housel was also called as a witness at the show-cause hearing. In a separate tort action entitled *Hegedus v. Johnson*, Cuyahoga C.P. No. 290943, an issue similar to Corn's alleged defense bias had been raised. In *Hegedus*, Judge Daniel Gaul had appointed Housel as a special master to investigate Corn's income and financial records pertaining to defense medical examinations. (The Eighth District Court of Appeals later granted a writ of prohibition in that case, finding that Judge Gaul lacked the authority to appoint a special master. *State ex rel. Allstate Ins. Co. v. Gaul* [1999], 131 Ohio App.3d 419, 722 N.E.2d 616.) In his testimony, Housel revealed information he had obtained during his investigation of Corn in the *Hegedus* case. Following Housel's testimony, Judge Russo continued the hearing to October 13, 1998.

**{¶ 9}** On October 8, 1998, relators filed a petition for a writ of prohibition and a writ of mandamus to prevent respondent from going forward with the contempt hearing in the *Crow* case. The court of appeals granted an alternative writ of prohibition. During the pendency of that litigation in the court of appeals ("*Corn I*"), on April 2, 1999, the parties in the *Crow* litigation entered into a settlement agreement and agreed to voluntarily dismiss the case with prejudice.

**{¶ 10}** On June 4, 1999, the court of appeals issued its final decision in "*Corn I*." The court found that respondent Russo had jurisdiction to proceed with the contempt hearing against Corn but did not have jurisdiction to compel testimony or seek evidence from attorney Housel. Therefore, the court of appeals granted a permanent writ of prohibition in that regard and ordered the testimony of attorney Housel to be sealed. *State ex rel. Corn v. Russo* (1999), 133 Ohio App.3d 57, 726 N.E.2d 1052.

**{¶ 11}** On June 11, 1999, respondent Russo returned *Crow* to her active docket and continued the show-cause hearing. To prohibit respondent from proceeding with the contempt hearing, relators commenced this action on July 23,

1999, by filing a verified complaint, again seeking writs of prohibition and mandamus against respondent, Judge Russo.

{¶ 12} The court of appeals denied the writ of mandamus but granted the writ of prohibition.[1] The court found, *inter alia*, that once the parties dismissed the underlying case, respondent lacked jurisdiction to conduct further proceedings. The court further found that because the contempt proceedings were civil in nature, respondent did not have the authority to continue the contempt hearing.

{¶ 13} The cause is now before this court upon an appeal as of right.

{¶ 14} The primary issue in this case is whether the court of appeals erred in finding that respondent lacked jurisdiction to hear the contempt proceedings. For the reasons that follow, we find that respondent did have jurisdiction over the contempt proceedings. Therefore, we reverse the court of appeals' decision and deny relators' writ of prohibition.

{¶ 15} A writ of prohibition is an extraordinary remedy that is granted in limited circumstances with great caution and restraint. *State ex rel. Henry v. Britt* (1981), 67 Ohio St.2d 71, 73, 21 O.O.3d 45, 47, 424 N.E.2d 297, 298-299. Proceedings on a petition for a writ of prohibition test the subject-matter jurisdiction of the lower court. Thus, a writ of prohibition prevents an inferior court from exceeding its jurisdiction. *State ex rel. Barton v. Butler Cty. Bd. of Elections* (1988), 39 Ohio St.3d 291, 530 N.E.2d 871.

{¶ 16} For a writ of prohibition to be granted, the relator must prove that (1) the lower court is about to exercise judicial power, (2) the exercise of power is unauthorized by law, and (3) the relator possesses no other adequate remedy of law. *State ex rel. Tollis v. Cuyahoga Cty. Court of Appeals* (1988), 40 Ohio St.3d 145,

---

1. In claiming that they were entitled to a writ of mandamus, relators alleged that respondent failed to comply with Corn I by not turning over documents the court ordered to be returned. Finding that relators had an adequate remedy at law, in that they could file a show-cause motion, the court of appeals denied the writ of mandamus. That issue is not before this court.

4

147, 532 N.E.2d 727, 729. However, even where an appeal may be available, "[w]hen a court patently and unambiguously lacks jurisdiction to consider a matter, a writ of prohibition will issue to prevent assumption of jurisdiction regardless of whether the lower court has ruled on the question of its jurisdiction." *Ohio Dept. of Adm. Serv., Office of Collective Bargaining v. State Emp. Relations Bd.* (1990), 54 Ohio St.3d 48, 562 N.E.2d 125, syllabus; *State ex rel. Sanquily v. Lucas Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 79, 80, 573 N.E.2d 606, 608. In such a case, " 'the availability or adequacy of a remedy of appeal * * * is immaterial.' " *Id*. at 79, 573 N.E.2d at 607, quoting *State ex rel. Adams v. Gusweiler* (1972), 30 Ohio St.2d 326, 329, 59 O.O.2d 387, 388, 285 N.E.2d 22, 24.

{¶ 17} The court of appeals found that when the parties dismissed their case pursuant to Civ.R. 41(A)(1), respondent patently and unambiguously lacked jurisdiction to conduct further proceedings in *Crow* and did not have the jurisdiction to proceed with the contempt proceedings against relators, as they were civil in nature.

{¶ 18} Thus, in deciding whether respondent patently and unambiguously lacks subject-matter jurisdiction in this matter, our first inquiry is whether the contempt proceedings were civil or criminal in nature.

{¶ 19} Contempt is defined in general terms as disobedience of a court order. " 'It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.' " *Denovchek v. Trumbull Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 14, 15, 520 N.E.2d 1362, 1363-1364, quoting *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815, paragraph one of the syllabus. Contempt proceedings are often classified as *sui generis*, neither civil nor criminal. *Id*. However, most courts distinguish between civil and criminal contempt proceedings. The distinction is usually based on the purpose to be served by the sanction. Dan D. Dobbs, Contempt of Court: A Survey (1971), 56 Cornell

L.Rev. 183, 235.  Thus, in determining whether a contempt is civil or criminal, the pertinent test is "what does the court primarily seek to accomplish by imposing sentence?"  *Shillitani v. United States* (1966), 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627.

{¶ 20} Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order.  *Id.* Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court.  *Denovchek v. Trumbull Cty. Bd. of Commrs.,* 36 Ohio St.3d at 15, 520 N.E.2d at 1363.  Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court.  *State v. Kilbane* (1980), 61 Ohio St.2d 201, 204-205, 15 O.O.3d 221, 223, 400 N.E.2d 386, 390.

{¶ 21} Relators contend that respondent was conducting a civil contempt proceeding, since respondent was attempting to compel relators to comply with a court order to produce documents for the benefit of the plaintiffs.  Thus, relators maintain that when the underlying lawsuit was dismissed under Civ.R. 41(A)(1), respondent no longer had jurisdiction to proceed with the contempt proceedings.

{¶ 22} It is well established that where the parties settle the underlying case that gave rise to the civil contempt sanction, the contempt proceeding is moot, since the case has come to an end.  *Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 451-452, 31 S.Ct. 492, 502, 55 L.Ed. 797, 810.  Respondent understands this principle and concedes that she has no jurisdiction over any civil contempt arising from the underlying case.  However, respondent argues that what began as a civil contempt shifted to a criminal contempt when it was learned that relators had purposefully conducted their business in such a fashion as to circumvent civil discovery rules and orders of the court attempting to enforce them.  Thus, respondent characterizes the contempt proceedings as being of a dual nature, both

civil and criminal. What initially started as a civil contempt to determine whether relators violated the September 4, 1998 order became a criminal contempt matter to investigate an intentional practice of destroying records, which was admittedly done in part to prevent their use by future litigants. Thus, respondent contends that the dismissal of the underlying civil action in *Crow* did not divest her from jurisdiction to hold a criminal contempt hearing.

{¶ 23} We agree with respondent's characterization of the contempt proceedings. The proceedings were initiated by respondent to determine why relators did not comply with a subpoena and a subsequent court order to provide documents to the plaintiffs. At this point, the purpose of the proceedings was to compel compliance with the court's order; hence, it was civil in nature. However, when respondent learned that it was relators' practice to intentionally and systemically destroy records to prevent opposing counsel and the court from inquiring into his practices, the purpose of the contempt sanction was no longer restricted to coercing relators into complying with the court's orders. Instead, its purpose was to vindicate the authority of the judge and to punish relators if she found that their practices impeded the judicial process and frustrated the civil discovery rules. Thus, what began as a civil matter became criminal in nature.

{¶ 24} We must next decide whether respondent can go forward with the criminal contempt proceedings even though the underlying lawsuit has been dismissed.

{¶ 25} In *Cooter & Gell v. Hartmarx Corp.* (1990), 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359, the United States Supreme Court decided a similar issue in the context of whether it could impose under Fed.R.Civ.P. 11 sanctions on a law firm after the firm had dismissed the complaint in an antitrust action. The law firm had argued, like the relators argue in this appeal, that the court had no jurisdiction to impose sanctions, since the lawsuit had been dismissed. The United States Supreme Court disagreed. The court ruled:

"Like the imposition of costs, attorney's fees, and *contempt sanctions*, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue:  whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.  Such a determination may be made after the principal suit has been terminated." (Emphasis added.)  *Id.* at 396, 110 S.Ct. at 2456, 110 L.Ed.2d at 376.

{¶ 26} The court cited with approval those federal  decisions where the courts have held that collateral issues (such as criminal contempt) survive the dismissal of a case:

"It is well established that a federal court may consider collateral issues after an action is no longer pending.  * * *  A criminal contempt charge is likewise 'a separate and independent proceeding at law' that is not part of the original action. * * *  *A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated*." (Emphasis added.)  *Id.* at 395-396, 110 S.Ct. at 2455-2456, 110 L.Ed.2d at 375.

{¶ 27} We agree with these federal authorities and find that a court may consider the collateral issue of criminal contempt even after the underlying action is no longer pending.  *Id.*  Consequently, we hold that the dismissal of an underlying civil action does not divest a court of common pleas of jurisdiction to conduct criminal contempt proceedings.  Therefore, even though the parties dismissed the underlying personal injury lawsuit in this case, we find that respondent has jurisdiction to continue the criminal contempt proceedings against relators.

{¶ 28} Relators also question whether respondent has jurisdiction to investigate whether Dr. Corn's record-keeping practices violate State Medical Board requirements.  At the September 28, 1998 contempt hearing, respondent raised this issue after questioning relator Corn about his failure to keep patient records.  Respondent then ordered the parties to brief the issue of whether the failure

8

to keep patient records constitutes a violation of R.C. 4731.22(B)(6) or Ohio Adm.Code 4731-11-02 (grounds for discipline of licensed physicians).[2]

{¶ 29} Relators contend that respondent patently and unambiguously lacks jurisdiction over the issue of whether there is a violation under R.C. Chapter 4731 and has, in fact, improperly inserted herself into the exclusive jurisdiction of the State Medical Board. However, respondent maintains that she was not attempting to conduct an investigation into whether relator Corn violated any provision under R.C. Chapter 4731. Instead, she states that she was asserting her jurisdiction to punish contempts.

{¶ 30} R.C. Chapter 4731 provides for the establishment of the State Medical Board and contains provisions concerning the licensing and disciplining of physicians. Of particular relevance in this case is R.C. 4731.22(F)(1), formerly (C)(1). This section provides, "*Any person* may report to the board in a signed writing any information that the person may have that appears to show a violation of any provision of this chapter or any rule adopted under it." (Emphasis added.) By its express language, this section affords any person, including respondent, the right to report any potential violation to the State Medical Board. Although respondent does not have the jurisdiction to actually decide whether relator Corn has, in fact, violated any provision of R.C. Chapter 4731, she does have the right to further investigate whether she believes that there has been a violation and to report any alleged violation to the State Medical Board. Accordingly, in connection with the contempt proceedings, respondent did not patently and unambiguously lack the jurisdiction to inquire into whether the practices of relator Corn's practices violate R.C. Chapter 4731.

---

2. The court also ordered the parties to brief the issues of what privilege, if any, attaches to appointments maintained in a physician's appointment book and whether destruction of records relating to the examination of individuals in connection with pending litigation and/or anticipated litigation constitutes contempt.

**{¶ 31}** Since we find that respondent has jurisdiction over the criminal contempt proceedings and has not usurped the State Medical Board's jurisdiction, we deny relators' request for a writ of prohibition. Accordingly, we reverse the judgment of the court of appeals and deny the writ of prohibition, thereby allowing further proceedings on the criminal contempt charge. Before continuing the contempt hearing, respondent shall afford relators with all procedural due process safeguards outlined in R.C. 2705.03.[3]

*Judgment reversed*
*and writ denied.*

MOYER, C.J., DOUGLAS, RESNICK and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

**{¶ 32}** Because I agree with the court of appeals' unanimous conclusion that the contempt proceedings against Dr. Corn were, and remained, *civil* in nature, I respectfully dissent.

**{¶ 33}** Respondent initiated contempt proceedings against Dr. Corn when he did not produce documents sought by the plaintiffs. The purpose of the proceedings was to coerce Dr. Corn to comply with the court's order to produce the documents for the benefit of the plaintiffs. "If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil." *Denovchek v. Trumbull Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362, 1364, citing *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 18 O.O.3d 446, 448, 416 N.E.2d 610, 613. As the appellate panel concluded, "[n]ow that the Crow litigation has been settled and dismissed,

---

3. R.C. 2705.03 sets forth procedures and constitutional guarantees that must be afforded individuals charged with criminal contempt.

the civil contempt hearing for the benefit of the plaintiffs must also end. The pursuit of documents from Dr. Corn * * * is over." *State ex rel. Corn v. Russo* (Nov. 24, 1999), Cuyahoga App. No. 76730, unreported, 1999 WL 1085519, at *7.

{¶ 34} The majority concedes that the contempt proceedings against Dr. Corn were, at their inception, in the nature of civil contempt. But the majority concludes that the contempt proceedings "became" criminal in nature at some point after the proceedings had begun. The majority's approach is based not on the underlying purpose of the contempt proceedings against Dr. Corn, which is the appropriate inquiry in these cases,[4] but rather on the post hoc characterization of those proceedings suggested by respondent after Dr. Corn sought a writ of prohibition questioning her jurisdiction to proceed.

{¶ 35} The majority's approach conflicts with this court's prior recognition of the fact that even though contempt proceedings are *sui generis*, and thus neither wholly civil nor wholly criminal, "for certain purposes we have found it necessary to classify contempt proceedings as *either* 'civil' *or* 'criminal.' " (Emphasis added.) *Denovchek,* 36 Ohio St.3d at 16, 520 N.E.2d at 1364.

{¶ 36} One of the reasons that courts categorize contempt proceedings as *either* civil *or* criminal (and not as a continuum consisting of both) is so that courts may determine, with some degree of consistency, whether contempt proceedings initiated for a particular purpose may continue after dismissal of the underlying action. See, *e.g.*, *Cooter & Gell v. Hartmarx Corp.* (1990), 496 U.S. 384, 395-396, 110 S.Ct. 2447, 2455-2456, 110 L.Ed.2d 359, 375. Another reason that courts assign contempt proceedings into one of these two categories is that

---

4. " 'It is not the fact of punishment but rather its character and purpose that often serve to distinguish' civil from criminal contempt." Shillitani v. United States (1966), 384 U.S. 364, 369, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627, quoting Gompers v. Bucks Stove & Range Co. (1911), 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806. See, also, State v. Kilbane (1980), 61 Ohio St.2d 201, 206, 15 O.O.3d 221, 224, 400 N.E.2d 386, 390 ("The inquiry to be made under this test is 'what does the court primarily seek to accomplish by imposing sentence?' " quoting Shillitani, 384 U.S. at 370, 86 S.Ct. at 1535, 16 L.Ed.2d at 627).

"notwithstanding the many elements of similarity in procedure and in punishment, there are some differences between the two classes of proceedings which involve substantial rights and constitutional privileges. * * * [I]t is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." *Gompers v. Bucks Stove & Range Co.* (1911), 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797, 807, citing *Boyd v. United States* (1886), 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. Today's decision blurs the distinction that courts have developed for these purposes.

{¶ 37} The majority cites no legal authority for its conclusion that civil contempt proceedings can, in midstream, transform into criminal contempt proceedings that will survive dismissal of the underlying action. Though the majority eventually quotes from the United States Supreme Court's decision in *Cooter & Gell*, *supra,* that case begs the question presented here, for it simply stands for the generally accepted proposition that "[a] *criminal* contempt charge is * * * not part of the original action," and that imposition of *criminal* contempt sanctions may occur after termination of the underlying action. (Emphasis added.) *Cooter & Gell,* 496 U.S. at 396, 110 S.Ct. at 2456, 110 L.Ed.2d at 375. Though *Cooter* holds that criminal contempt proceedings survive dismissal of the underlying action, the issue here is whether civil contempt proceedings may be characterized in retrospect as having *become* criminal contempt proceedings in order to apply that rule.

{¶ 38} In her briefs, respondent relies on our *Kilbane* case as an example of this court's refusal to "pigeonhole" contempt sanctions as being solely civil or criminal. See *State v. Kilbane* (1980), 61 Ohio St.2d 201, 15 O.O.3d 221, 400 N.E.2d 386. Respondent correctly notes that in *Kilbane*, this court rejected the contention that every conditional contempt is civil contempt. *Id.* at 206, 15 O.O.3d at 224, 400 N.E.2d at 390. But *Kilbane*, like *Cooter*, stopped well short of holding

12

that what begins as one category of contempt proceedings may become another type. In fact, in *Kilbane* this court decided that the addition of conditions to a criminal contempt sanction did *not* transform criminal contempt into civil contempt because the addition of these conditions did not alter the "overriding punitive purpose" of the proceedings. *Id.* at 206, 15 O.O.3d at 224, 400 N.E.2d at 391.

{¶ 39} My position in this case should not be construed as disapproving of a trial court's inherent power to impose criminal contempt sanctions. Before an underlying case is dismissed, trial courts may impose sanctions to punish offenses against the dignity or process of the court, *or* to coerce compliance with orders that were for the benefit of a party. But I agree with the court of appeals that once an underlying case is dismissed, trial courts lack jurisdiction to pursue contempt sanctions for violations of orders intended to benefit a party to the underlying case.

{¶ 40} For the foregoing reasons, I would affirm the court of appeals' decision granting the writ.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

*McLaughlin & McCaffrey, L.L.P., Patrick M. McLaughlin, W. Joseph Melnik* and *Colin R. Jennings,* for appellees.

*Zukerman, Daiker & Lear Co., L.P.A., Larry W. Zukerman* and *S. Michael Lear,* for appellant.

_____