[Cite as *In re M.D.T.*, 2026-Ohio-1774.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE M.D.T. | : | |
| | : | No. 115543 |
| A Minor Child | : | |
| | : | |
| [Appeal by the Cuyahoga County Office of Child Support Services] | : | |
| | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED
**RELEASED AND JOURNALIZED:** May 14, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA24113013

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew D. Greenwell and Jake A. Elliott, Assistant Prosecuting Attorneys, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant Cuyahoga County Office of Child Support Services ("OCSS" or "the agency") appeals an order of the Cuyahoga County Court of Common Pleas, Juvenile Division, finding it in contempt for failing to comply with a magistrate's order dated April 17, 2025. OCSS claims the following errors:

> 1. The Trial Court abused its discretion when it found beyond a reasonable doubt OCSS was in criminal contempt because the

unrefuted evidence established that OCSS was unaware of the Court's April 16, 2025 Order to produce documents reviewed in generating its administrative child support orders in the case and therefore did not possess the requisite intent to defy the Court's Order.

2. The Trial Court abused its discretion when i[t] improperly shifted the burden in a criminal contempt proceeding to OCSS, the alleged contemptor [sic], to prove its innocence of the alleged failure to comply with the order, despite the well-established law requiring the movant, in this case the Court, to prove OCSS' guilt beyond a reasonable doubt.

{¶ 2} We find insufficient evidence of criminal contempt and vacate the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} This appeal concerns orders issued to OCSS during the pendency of a child-support case. The father ("Father") of the child filed an objection to an administrative order issued by OCSS on February 18, 2025, requiring him to pay $927.57 per month in child support and $23.80 per month for cash medical support, plus related processing fees beginning on March 3, 2025. A magistrate held a hearing on Father's objection on April 8, 2025. During the hearing, Father questioned the overtime earnings OCSS used to calculate his support obligations, and the juvenile court orally requested that OCSS provide the documents used to generate Father's support obligations either in a notice of submission prior to trial or with a witness at trial.

{¶ 4} On April 10, 2025, OCSS, through its counsel, the Cuyahoga County Prosecutor's Office, filed a "Notice of Submission of Documents." In the submission, OCSS provided a "corrected" administrative order for child support and medical

support, which included the "Parenting Child Support Computation Worksheet" that OCSS used to calculate the administrative order. It did not provide any additional documents.

{¶ 5} On April 14, 2025, the magistrate issued a pretrial order requiring OCSS "to file a Notice of Submission prior to the next hearing or provide documents at the next hearing used to generate the administrative order." On April 17, 2025, the magistrate issued another judgment entry requiring OCSS to file the documents it relied on in issuing the administrative child-support order dated February 18, 2025, and the corrected child-support order dated February 21, 2025.

{¶ 6} The magistrate's April 17, 2025 order stated, in part, that "filing the administrative order itself as the document used to create the child support order is an absurd interpretation of this courts [sic] order." The order further stated that OCSS was required to provide the requested documents to the court at least 14 days before the trial scheduled to take place on June 3, 2025. Regarding the requested documents, the magistrate's order stated, in relevant part:

> OCSS is further ordered to file a print out of all notes in the running record comments in SETS (found on the "SFRC" screen) which detail how the support officer calculated the support obligation in this case both in the original and corrected orders.

> Finally, OCSS is ordered to file a print out of all notes in the running record comments in sets (found on the "SFRC" screen) which explain why a corrected order was needed in this case and what was changed between the February 18, 2025 order and the February 24, 2025 corrected order under which OCSS is believed to be currently operating for this child.

> In lieu of filing a Notice of Submission as outlined above, OCSS may present Administrative Hearing Office[r] . . . who issued the

administrative orders in this case, or another competent witness, to testify at the trial. The witness produced by OCSS must be knowledgeable regarding how the order in this case was calculated and should bring all documents outlined above.

**Failure to file a Notice of Submission, or produce a suitable witness to provide the needed information, may result in a finding of civil contempt or other appropriate sanctions.**

(Emphasis in original.) The April 17, 2025 magistrate's decision was emailed to the Cuyahoga County Prosecutor's Office. It was not sent directly to OCSS or to any employee of the agency.

{¶ 7} On June 2, 2025, the day before the June 3, 2025 trial, OCSS, through counsel, filed a "Notice of Inability to Comply and Brief in Support of the Agency's Inability to Comply" with the court's April 17, 2025 order. OCSS asserted that it could not comply with the court's order because (1) the order was sent to the prosecutor's office and assistant prosecuting attorneys do not assist pro se litigants who challenge administrative support orders, (2) complying with the magistrate's order could require an assistant prosecuting attorney to testify as a witness in the case, (3) the court's order does not exclude information the disclosure of which is prohibited under Ohio Adm.Code 3125.50, and (4) the obligor (Father) did not request the relief ordered by the magistrate.

{¶ 8} The magistrate proceeded with the trial on Father's objection to the administrative child-support order without the requested documents from OCSS. There appears to have been no attempt to reschedule the hearing on Father's

objection to allow the court to either consider OCSS's reasons for noncompliance or to obtain the requested records.

{¶ 9} Father argued at the hearing that OCSS incorrectly calculated his overtime on Line 2 of the child-support computation worksheet. Despite being ordered to do so, Father, himself, failed to bring documents to substantiate his claim that OCSS used incorrect data to calculate his income. The magistrate nevertheless rendered judgment based on Father's testimony that OCSS had used incorrect information to conclude that his average overtime earnings were $12,685.65 and reduced the amount of overtime in Line 2 to $7,7334.29. As a result, Father's annual income was reduced by $5,351.65, which resulted in Father's support obligation being reduced to $870.17 per month, and his cash medical support obligation was reduced to $22.78 per month. The magistrate issued his decision on June 17, 2025. Neither Mother nor Father were represented by counsel and neither party objected to the magistrate's decision. In the absence of an objection, the juvenile court adopted the magistrate's decision on July 3, 2025.

{¶ 10} On June 10, 2025, the magistrate issued a judgment entry ordering OCSS Administrator "Tiffany Dobbins" to appear before the magistrate on June 27, 2025, to "show cause why OCSS should not be held in criminal contempt for failing to comply with the Magistrate's Order issued April 17, 2025." Because the trial on Father's objection had proceeded without the requested documents and Father's child-support obligation had already been reduced, the court informed OCSS that the show-cause hearing would be a criminal-contempt proceeding rather than the

previously contemplated civil-contempt proceeding that would have allowed OCSS to purge the alleged contempt. The June 10, 2025 magistrate's decision again did not mention the reasons for noncompliance outlined in the agency's "Notice of Inability to Comply." OCSS, through counsel, filed an objection to the magistrate's decision on June 23, 2025. On June 25, 2025, the trial court overruled the objection and ordered the director of OCSS or "any other competent witness" to appear at the show-cause hearing.

{¶ 11} OCSS appeared at the hearing through counsel and called two witnesses: Tiffany Dobbins-Brazelton, the OCSS director, and Katherine Slosarik, an OCSS records custodian. Neither witness had any knowledge of the April 17, 2025 order. The assistant county prosecutor who represented OCSS argued the magistrate could not find OCSS in criminal contempt because there was no evidence that the agency recklessly or intentionally violated the court's April 17, 2025 order to produce documents. He asserted that although the court's order was served on the Cuyahoga County Prosecutor's Office, there was no evidence that anyone at OCSS knew about the order. He, therefore, argued that the evidence presented at the hearing demonstrated negligent miscommunication rather than intentional misconduct. OCSS also produced the documents in response to the court's order.

{¶ 12} Following the hearing, the magistrate issued a decision finding OCSS guilty of criminal contempt and sentencing the agency to a fine of $250. The magistrate's decision did not address any of the reasons OCSS had articulated in the "Notice of Inability to Comply and Brief in Support of the Agency's Inability to

Comply" with the court's April 17, 2025 order. The magistrate nevertheless pointed out that the mother and child in this case were potentially harmed by OCSS's failure to produce the requested documents because the amount of child support was reduced based on Father's testimony alone. OCSS, through counsel, filed objections to the magistrate's decision, arguing there was no evidence that the agency intentionally failed to comply with the court's April 17, 2025 order. The juvenile court overruled the objections, found OCSS guilty of criminal contempt, and imposed a fine of $250. OCSS now appeals the trial court's judgment.

## II. Law and Analysis

### A. Standard of Review

{¶ 13} Contempt can be either direct or indirect. *In re J.M.*, 2008-Ohio-6763, ¶ 46 (12th Dist.). Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. Indirect contempt involves acts occurring outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders. R.C. 2705.02*; In re Lance*, 2016-Ohio-2717, ¶ 12 (8th Dist.).

{¶ 14} Contempt is further classified as either civil or criminal. *Oak Hill Banks v. Ison*, 2003-Ohio-5547, ¶ 14 (4th Dist.). "This distinction depends largely upon the character and purpose of the punishment imposed." *Id.* Civil contempt is characterized by a conditional sanction that gives the contemnor an opportunity to purge the contempt by complying with the court's order. *Cleveland Hts. v. Preston*, 2026-Ohio-344, ¶ 23 (8th Dist.), citing *Liming v. Damos*, 2012-Ohio-4783, ¶ 12. In

a civil contempt proceeding, the contemnor is only punished if he or she fails to purge the contempt through compliance with the court's order.

{¶ 15} By contrast, a criminal contempt proceeding does not afford the contemnor an opportunity to purge the contempt. Criminal contempt is "characterized by unconditional sanctions intended to punish the contemnor and vindicate the authority of the court." *Doe v. Univ. Hosps. Health Sys.*, 2023-Ohio-2120, ¶ 17 (11th Dist.), citing *Liming* at ¶ 12. Criminal contempt is solely punitive.

{¶ 16} The juvenile court found OCSS guilty of indirect criminal contempt of court. Ordinarily, we review contempt findings for an abuse of discretion. *See, e.g.*, *Miller v. Miller*, 2020-Ohio-5262, ¶ 7 (8th Dist.), citing *Hissa v. Hissa*, 2014-Ohio-1508, ¶ 21 (8th Dist.). However, a court does not have discretion to impose sanctions for criminal contempt unless it finds all the elements for criminal contempt proven beyond a reasonable doubt. *In re Mallory-Nichols*, 2023-Ohio-3982, ¶ 28 (8th Dist.). Thus, when reviewing a trial court's finding of indirect, criminal contempt, an appellate court """must determine whether sufficient evidence existed for the trial court to reasonably conclude beyond a reasonable doubt that the contemnor purposely, willfully, or intentionally violated a prior court order."""" *In re D.S.S.*, 2020-Ohio-5386, ¶ 19 (11th Dist.), quoting *Weisgarber v. Weisgarber*, 2016-Ohio-676, ¶ 10 (5th Dist.), quoting *In re West*, 2015-Ohio-1501, ¶ 19 (5th Dist.). *See also In re Mallory-Nichols* at ¶ 28.

{¶ 17} In short, to be found guilty of criminal contempt for failure to comply with a court order, the court must find, beyond a reasonable doubt, that the

contemnor intentionally failed to comply with a valid court order. *Univ. Hosps. Health Sys.* at ¶ 18; *In re Mallory-Nichols* at ¶ 28, quoting *Midland Steel Prods. Co. v. Internatl. Union, United Auto., Aero. & Agricultural Implement Workers, Local 486*, 61 Ohio St.3d 121, 127 (1991) ("[I]n cases of indirect criminal contempt, 'it must be shown that the alleged contemnor intended to defy the court.'").

## B. Criminal Contempt Finding

{¶ 18} In the first assignment of error, OCSS argues there was insufficient evidence to support the court's criminal-contempt finding because there was no evidence that OCSS intentionally violated the court's April 17, 2025 order. We agree.

{¶ 19} Neither the director of OCSS nor its records custodian had any knowledge of the court's request for the documents used to generate Father's support obligations. The notice was sent to the Cuyahoga County Prosecutor's Office, and it appears from the testimony that the notice was not communicated to OCSS. The failure to convey the notice to OCSS was likely the result of an oversight or misunderstanding. The prosecutor filed the "Notice of Inability to Comply," which may or may not have had any merit, but the magistrate failed to consider the arguments presented therein. Regardless of whether there was merit to any of the reasons outlined in the "Notice of Inability to Comply," there is no evidence that OCSS intentionally defied the court's order. Therefore, the trial court erred in finding OCSS guilty of criminal contempt.

{¶ 20} Moreover, criminal contempt is a very serious allegation. It is reserved for "'exceptional circumstances' . . . such as acts threatening the judge or

disrupting a hearing or obstructing court proceedings." *Harris v. United States*, 382 U.S. 162, 164 (1965), quoting *Brown v. United States*, 359 U.S. 41, 54 (1959).

{¶ 21} Criminal contempt "always, and rightly, is regarded with disfavor and, if imposed in passion or pettiness, brings discredit to a court as certainly as the conduct it penalizes." *Sacher v. United States*, 343 U.S. 1, 8 (1952); *see also United States v. Concord Mgt. & Consulting L.L.C.*, 2019 U.S. Dist. LEXIS 225949 (D.C. Dist. July 1, 2019), quoting *United States v. Koubriti*, 305 F.Supp.2d 723, 748 (E.D. Mich. 2003) ("Criminal contempt is generally reserved for 'repeated and flagrant abuses' that demonstrate a willful disregard for the court's authority."). In other words, criminal contempt should not be imposed for inappropriate reasons. A court's criminal-contempt power should be used only in the rarest of circumstances where the contemnor has engaged in an egregious disregard for the court's authority.

{¶ 22} The magistrate could have continued the hearing on Father's objection to the child-support calculation in order to allow OCSS to purge a case of civil contempt. In that way, the magistrate could have received the requested documents prior to the hearing and factored them into the court's evaluation of Father's objection. Instead, the court proceeded with the hearing on Father's objection without the benefit of the documents, and the magistrate was forced to reduce Father's child-support obligation based on Father's uncontroverted, and possibly self-serving, testimony. The reduction in child support may have been

unwarranted and, by the magistrate's own admission, the reduction in child support may have resulted in harm to the child unnecessarily.

{¶ 23} While the magistrate was understandably frustrated that the requested documents were not produced, litigation does not always proceed smoothly, and courts need to be flexible in order to achieve the most just outcomes. As previously stated, courts must refrain from acting for inappropriate reasons such as frustration or passion because such conduct "brings discredit to the court as certainly as the conduct it penalizes." *Sacher* at 8. If the court felt the requested information was necessary for its decision, it could have handled this case in a way that allowed it to receive the requested information. The court could have continued the hearing. Instead, it went forward and decreased the payment at the expense of the mother and child, who may have lost a portion of their child support unnecessarily. Indeed, Father also failed to provide documentation, as ordered, to support his testimony regarding the alleged miscalculation of his overtime, and he was not sanctioned for it. The magistrate's decision to then proceed with a criminal-contempt proceeding against OCSS under these circumstances was an abuse of discretion. The juvenile court compounded the error by ratifying the magistrate's decision. We, therefore, sustain the first assignment of error.

{¶ 24} Our resolution of the first assignment of error is dispositive of the appeal. Therefore, the second assignment of error is moot.

{¶ 25} The juvenile court's order finding OCSS guilty of criminal contempt is hereby vacated.

It is ordered that costs are waived.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
DEENA R. CALABRESE, J., CONCUR