[Cite as *In re Estate of Shurman*, 2026-Ohio-1343.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: ESTATE OF LOUIS W. SHURMAN, DECEASED, | Case Nos. 2025CA00099<br>2025CA00100<br>2025CA00101<br>2025CA00102 |
| IN RE: ESTATE OF IRENE R. SHURMAN, DECEASED, | |
| | Opinion And Judgment Entry |
| IN RE: ESTATE OF GERALD L. SHURMAN, DECEASED, | Appeal from the Stark County Court of Common Pleas, Probate Division, Case Nos. 241722, 244969, 244970, 244971 |
| IN RE: ESTATE OF DARLENE M. SHURMAN, DECEASED. | Judgment: Affirmed |
| | Date of Judgment Entry: April 13, 2026 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

**APPEARANCES:** GERALD B. GOLUB, Pro Se, Appellant; No Appearance, for Appellees.

*Baldwin, P.J.*

{¶1} The appellant, Attorney Gerald B. Golub, appeals the Stark County Probate Court's decision finding him in contempt of court for his failure to comply with the court's previous decision ordering him to return attorney fees he paid himself for work on four interrelated estates without first obtaining the court's approval. For the reasons that follow, we affirm the decision of the trial court.

**STATEMENT OF FACTS AND THE CASE**

{¶2} This matter was before this Court previously on the issue of whether or not the trial court erred in ordering the appellant to return attorney fees to the estates in *Est.*

*of Shurman v. Est. of Shurman (In re Est. of Shurman)*, 2025-Ohio-666, *appeal not accepted,* 2025-Ohio-2162, in which the factual background was succinctly summarized as follows:

Attorney Golub represented the estate of Louis W. Shurman ("Decedent"), who died testate on December 1, 2021. Decedent was the last surviving child of Irene R. Shurman, who died intestate on April 16, 2000. Irene R. Shurman was survived by three (3) adult children: Gerald L. Shurman, Darlene M. Shurman, and Decedent. Gerald L. Shurman died intestate on August 12, 2015. Darlene M. Shurman died intestate on February 29, 2019. The beneficiaries of Decedent's estate, which included the estates of Irene, Gerald, and Darlene Shurman, are William Sharrard, Jr. ("Fiduciary"), and Tiffany Sharrad, his wife. Fiduciary was named the executor of the Decedent's estate and the administrator of the three other estates.

On June 30, 2023, Attorney Golub withdrew as counsel. Attorney Laura Mills filed a notice of substitution of counsel on July 18, 2023. On September 18, 2023, Attorney Golub filed a civil action in the probate court (Case No. 247226), asserting tort claims and seeking money damages in the amount of $323,324.76, for his work on the four estates. *Golub v. Sharrard*, 2024-Ohio-6037, ¶ 9 (5th Dist.). Attorney Golub also sought treble damages for "assets not revealed or listed." The Complaint requested punitive damages, the removal of Fiduciary as fiduciary, the consolidation of the four estates, and the transfer of the matter to the General Division of the Stark County Court of Common Pleas. *Id.* Via Judgment Entry filed September

25, 2023, the probate court dismissed the complaint, finding Attorney Golub failed to assert a claim over which the probate court had jurisdiction. *Id.* at ¶ 10. Attorney Golub did not appeal.

On November 14, 2023, Attorney Golub filed a Complaint in the Stark County Court of Common Pleas, General Division (Case No. 2024-CA-00022), naming the Sharrards, Attorney Mills, and her law firm as defendants. *Id.* at ¶ 11. The Complaint alleged the Sharrards had breached a fee agreement and settlement agreement, Attorney Mills and her firm breached the settlement agreement and engaged in tortious interference of the fee agreement and settlement agreement, and the defendants committed theft. *Id.* Attorney Mills and the Sharrards filed motions to dismiss. *Id.* at ¶ 11. The trial court dismissed Attorney Golub's complaint for lack of jurisdiction, finding "the probate court is vested with exclusive jurisdiction over the fees charged over an estate manner." *Id.* at ¶ 18. The trial court further found, absent a fee agreement and a settlement agreement, there could be no tortious interference claim, and dismissed the complaint. *Id.* at ¶ 19. Attorney Golub appealed the trial court's decision to this Court, which affirmed. *Id.* at ¶ 63.

On December 6, 2023, the probate court ordered final accounts for all four estates be filed by March 6, 2024. On March 6, 2024, Attorney Mills filed a motion requesting a status conference as she did not have the necessary paperwork with which to complete the accounting. Attorney Mills did not serve Attorney Golub with a copy of the motion. The trial court

scheduled a status conference for April 2, 2024. The record does not show Attorney Golub received notice of the status conference.

During the status conference, the probate court learned Attorney Golub had taken fees from the estates without court approval. See, May 15, 2024, Judgment Entry at p. 2. As a result, the probate court issued a citation ordering Attorney Golub to appear before the court on April 23, 2024. The probate court, upon Attorney Golub's motion, rescheduled the citation hearing to May 13, 2024. The probate court conducted the citation hearing on that day.

Via Judgment Entry filed May 15, 2024, the probate court ordered, inter alia, Attorney Golub to return all attorney fees he received to Fiduciary within seven (7) days of the order. The probate court found Attorney Golub acknowledged he had paid himself $43,560.00, in attorney fees, but claimed he had done so with the consent of Fiduciary; therefore, he did not need the probate court's approval. The probate court further found Attorney Golub agreed to return the fees. A status conference was scheduled for May 23, 2024, to confirm compliance with the order to return the fees.

*Id*. at ¶¶ 2-7. In that case, this Court affirmed the trial court's May 15, 2024, Judgment Entry ordering the appellant to return the $43,560.00 in attorney fees he paid to himself without prior court approval. The appellant filed a discretionary appeal to the Ohio Supreme Court regarding said decision, which was disallowed by the Court. See, 2025-Ohio-2162.

**{¶3}** The appellant failed to return the $43,560.00 to the Fiduciary as ordered, and on March 26, 2025, counsel for the Fiduciary filed a Motion for Contempt asking the

trial court to issue an order requiring the appellant to show cause as to why he should not be held in contempt of court for his failure to comply with the May 15, 2024, Judgment Entry. The trial court issued an Order on March 27, 2025, as well as a Citation to Appear and Order to Show Cause on April 2, 2025, scheduling a show cause hearing on May 13, 2025.[1]

{¶4} The appellant filed a Motion to Dismiss the Charge of Contempt on May 6, 2025. However, the hearing proceeded on May 13, 2025, following which the trial court issued a Judgment Entry in which it set forth that it (1) advised the appellant of his right to counsel; (2) advised the appellant of the potential collateral consequences of the proceedings; (3) advised the appellant that he had options to remedy the matter, such as filing a motion for attorney fees; (4) advised the appellant that he had the option to argue financial hardship or the inability to pay; and, (5) continued the matter until June 17, 2025, thus allowing the appellant additional time to prepare.

{¶5} The Show Cause hearing proceeded on June 17, 2025, and the trial court issued its decision on July 16, 2025. The court noted that the appellant testified he had received $43,560.00 in attorney fees, acknowledged that he was ordered to return all monies to the Fiduciary, and conceded that he had not remitted any amount to the Fiduciary. In addition, the appellant submitted that he could not return the monies due

---

[1] The trial court also scheduled a status conference on April 23, 2025, regarding the status of the estates and the final accountings therein. The appellant filed a motion to cancel the status conference. However, because he had withdrawn from representation of the estates in 2023, the court determined that his presence at the status conference was not required and denied the motion. The status conference went forward as scheduled, and the court granted the fiduciary's request to extend administration of the estates. The appellant has made a number of arguments regarding his absence from the April 23, 2025, status conference, all of which are immaterial to the issue of whether he was in contempt for failing to comply with the court's May 15, 2024, judgment entry ordering him to return to the Fiduciary the attorney fees he took without prior court approval.

to financial hardship, that he had used the monies to pay his bills, and that the monies were no longer available. Finally, the appellant presented evidence regarding the extent of his assets and debts. The court analyzed the matter to determine if the appellant had engaged in indirect civil contempt and found, inter alia:

> . . . that the requisite burden of showing [the appellant] is in contempt of Court has been satisfied. Despite evidence presented that indicates [the appellant] may not be financially able to immediately repay the entirety of the ordered amount, [the appellant] is able to periodically remit lesser amounts. Granting Judgment to the Administrator will permit the Administrator to utilize all legal proceedings in aid of execution, while also providing appropriate "ability to pay" protections for [the appellant.]

The appellant filed a timely appeal from the trial court's entry, and sets forth the following ten assignments of error:

{¶6} "I. THE TRIAL COURT ERRED IN STATING APPELLANT VIOLATED A LAWFUL ORDER UNDER R.C. 2705.02, WHEN THE TRANSCRIPT OF THE MAY 13, 2024, HEARING CERTIFIED BY THE OFFICIAL COURT REPORTER UNDER JUDGE WERREN IS MATERIALLY DIFFERENT FROM THE TRANSCRIPT CERTIFIED UNDER JUDGE PARK, AND THE TRIAL COURT ADMITTED TO THE EXISTENCE OF AUDIO AND PRIVATE HEARINGS NOT DISCLOSED IN THE PRIOR APPEAL. THE COURT FURTHER ERRED IN DENYING BOTH THE RIGHT TO A CLOSING ARGUMENT, GUARANTEED BY *HERRING V. NEW YORK*, (1975) 422 US 853, AND DIRECT ACCESS TO AN ACCURATE RECORD OF THE PROCEEDINGS, GUARANTEED UNDER *STATE EX REL. PARIKH V. BERKOWITZ*, 2025-OHIO-2117."

**{¶7}** "II. THE TRIAL COURT ERRED IN STATING IN OPEN-COURT AND IN PUBLIC FILINGS THAT APPELLANT VIOLATED THE MAY 15, 2024, COURT ORDER BEFORE EVIDENCE WAS TAKEN."

**{¶8}** "III. THE TRIAL COURT ERRED IN HALING APPELLANT TO COURT ON A SUMMONS AND WARNING OF CRIMINAL PENALTIES ON A *MOTION FOR CONTEMPT* THAT LACKED AN AFFIDAVIT, PROBABLE CAUSE, OR AN ALLEGATION OF INTENT, IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 14; CRIM.R. 3(A); AND R.C. 2935.09."

**{¶9}** "IV. THE TRIAL COURT ERRED IN WARNING OF CRIMINAL PENALTIES FOR CONTEMPT AND IN PERMITTING COUNSEL FOR A PARTY THAT IS THE BENEFICIARY OF A COURT ORDER TO UNDERTAKE THE CONTEMPT PROSECUTION FOR ALLEGED VIOLATIONS OF THAT ORDER, IN VIOLATION OF *YOUNG V. U.S. EX REL. VUITTON ET FILS*, 481 U.S. 787 (1987) AND *WAMACK V. WILSON*, 2025-OHIO-1163, 30."

**{¶10}** "V. THE TRIAL COURT ERRED IN PROHIBITING APPELLANT FROM CALLING WITNESSES AND CROSS-EXAMINING HIS ACCUSERS, VIOLATING THE DUE PROCESS PROTECTIONS THE JULY 16, 2025, ORDER (P. 5), SAID WERE GUARANTEED UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND *IN RE OLIVER*, 333 U.S. 257 (1948)."

**{¶11}** "VI. THE TRIAL COURT ERRED IN STATING IN OPEN-COURT THAT SOCIAL SECURITY FUNDS WOULD BE CONSIDERED IN DETERMINING APPELLANT'S ABILITY TO PAY, AND IN FURTHER FINDING IN ITS ENTRY OF JULY 16, 2025, . (P. 8) THAT APPELLANT "IS PERIODICALLY ABLE TO REMIT LESSER

AMOUNTS," DESPITE APPELLANT'S OBJECTION THAT SUCH FUNDS ARE EXEMPT UNDER 42 U.S.C. 407."

{¶12} "VII. TO THE EXTENT THE COURT CONSIDERED APPELLANT'S INDIVIDUAL RETIREMENT ACCOUNT (IRA) IN  DETERMINING AN ABILITY TO PAY THE MAY 15, 2024, ORDER, THE COURT ERRED IN NOT SUSTAINING THE OBJECTION THAT THOSE FUNDS ARE ALSO EXEMPT."

{¶13} "VIII. THE TRIAL COURT ERRED IN NOT DETERMINING THE AMOUNT NECESSARY TO PURGE THE CONTEMPT."

{¶14} "IX. THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES IN THE CONTEMPT PROCEEDINGS AT A $400 PER HOUR RATE THAT HAD BEEN PREDETERMINED IN A [SIC] APRIL 2, 2025, RULING ON A [SIC] UNSERVED MOTION, DEPRIVING APPELLANT OF NOTICE AND A MEANINGFUL OPPORTUNITY TO CONTEST THE RATE."

{¶15} "X. THE TRIAL COURT ERRED IN GRANTING AN AWARD IN EXCESS OF THE AMOUNT SOUGHT IN THE MOTION FOR CONTEMPT AND IN EXCESS OF THE AMOUNT ALLOWED BY R.C. 2705.05 AND R.C. 2101.23."

{¶16} The appellant's brief is difficult to follow, and is replete with flawed reasoning and red herrings. Nevertheless, we are able to discern the salient issue before this Court, which is whether the trial court erred in finding that "the requisite burden of showing [the appellant] is in contempt of Court has been satisfied." We find that the trial court did not err when it found the appellant in indirect civil contempt of court.

## STANDARD OF REVIEW

{¶17} The appellate standard of review for a finding of contempt is abuse of discretion. *Gordon v. Gordon,* 2023-Ohio-4780, ¶14 (5th Dist.). To find an abuse of

discretion, we must find that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## ANALYSIS

**{¶18}** The issue of contempt was discussed in detail by this Court in the seminal case of *Bierce v. Howell*, 2007-Ohio-3050, (5th Dist.):

R.C. 2705.02 defines acts which may constitute contempt of court, and states in pertinent part: "A person guilty of any of the following acts may be punished as for contempt: "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer; ..."

Contempt has also been defined by the courts as the disregard or disobedience of an order or command of judicial authority. See, *First Bank of Marietta v. Mascrete, Inc.* (1998), 125 Ohio App. 3d 257, 263, 708 N.E.2d 262. Contempt may also involve an act or omission that substantially disrespects the judicial process in a particular case. *Byron v. Byron,* Franklin App. No. 03 AP 819, 2004 Ohio 2143 at P11, appeal not allowed by 103 Ohio St.3d 1462, 815 N.E.2d 678, 2004 Ohio 5056. Contempt can be characterized as either direct or indirect. Id. at P12. Direct contempt occurs when a party engages in conduct in the presence of the court that interferes with the administration of justice. R.C. 2705.01; *Turner v. Turner* (May 18, 1999), Franklin App. No. 98AP-999, 1999 Ohio App. LEXIS 2329, 1999 WL 356279. Indirect contempt, on the other hand, occurs when a party engages in conduct outside the presence of the court that demonstrates a

lack of respect for the court or its lawful orders. *Byron,* supra, citing *State v. Drake* (1991), 73 Ohio App. 3d 640, 643, 598 N.E.2d 115. Typically, the failure to pay child support is viewed by courts as indirect contempt, as it occurs outside of the presence of the court and demonstrates a lack of respect for the court. *DeLawder v. Dodson,* Lawrence App. No. 02CA27, 2003 Ohio 2092, at P11.

Courts may further characterize contempt as criminal or civil, depending upon the nature of the contempt sanctions. Criminal contempt imposes sanctions that are punitive in nature and are designed to punish the party for past failures to comply with the court's order. *State ex rel. Corn v. Russo*, 90 Ohio St. 3d 551, 2001 Ohio 15, 740 N.E.2d 265. Criminal contempt usually involves mandatory incarceration, and the party found to be in contempt usually has no opportunity to avoid the incarceration. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 253, 254, 416 N.E.2d 610.

Civil contempt, on the other hand, is remedial or coercive in nature, and will be imposed to benefit the complainant. *DeLawder*, supra, at P9, citing *Pugh v. Pugh* (1984), 15 Ohio St. 3d 136, 139, 15 Ohio B. 285, 472 N.E.2d 1085. Any sanction imposed by the court for civil contempt must provide the contemnor with an opportunity to purge himself or herself of the contempt. *DeLawder*, supra, at P10. "The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as so ordered." *Brown,* supra, at 253.

*Id*. at ¶¶ 15-18.

**{¶19}** This Court addressed contempt more recently in *Wamack v. Wilson,* 2025-Ohio-1163 (5th Dist.). Although the *Wamack* case dealt with criminal contempt and not civil contempt, which is the issue herein, the general discussion in *Wamack* regarding contempt is instructive. The Court stated:

Contempt is defined in general terms as disobedience of a court order. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 2001- Ohio 15, 740 N.E.2d 265 (2001). "'It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *Denovchek v. Trumbull Cty. Bd. of Commrs*. 36 Ohio St. 3d 14, 15, 520 N.E.2d 1362 (1988) *quoting Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.

**Ohio Courts Have Both Inherent Authority, and Statutory Authority to Punish for Contempt**

It has long been established in Ohio that courts have inherent authority to exercise their contempt power. *Hale v. State*, 55 Ohio St. 210, 45 N.E. 199 (1896). The inherent power of a court to punish for contempt of court may not be limited by legislative authority, nor does such power depend upon express constitutional grant. *State v. Local Union 5760, United Steelworkers of America*, 172 Ohio St. 75, 173 N.E.2d 331 (1961).

The Legislature has also provided courts with statutory authority to punish for contempt. R.C. 2705.02, Acts in Contempt of Court, defines Contempt in part as,

(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;

(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions…

A violation of R.C. 2705.02 is indirect contempt. *United Steelworkers of America*, 172 Ohio St. at 79. The penalties assessed for violations of the indirect contempt statute are set forth in R.C. 2705.05. *Id.*

A court may punish disobedience of its orders pursuant to both R.C. 2705.02(A) and its inherent power to enforce its authority. *Zakany v. Zakany*, 9 Ohio St.3d 192, 9 Ohio B. Rep. 505, 459 N.E.2d 870 (1984), syllabus; *State v. Yambrisak*, 2011-Ohio-5373, ¶ 12 (5th Dist.).

*Id.* at ¶¶ 12-16. The *Wamack* Court stated further:

In addition, contempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253-254, 416 N.E.2d 610 (1980); *In re Purola*, 73 Ohio App.3d 306, 311, 596 N.E.2d 1140 (3d Dist. 1991).

The pertinent test in distinguishing criminal and civil contempt is as follows: "what does the court primarily seek to accomplish by imposing sentence?" *Shillitani v. U.S.*S. 364, 370, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966); *State v. Yambrisak*, 2011-Ohio-5373, ¶ 15 (5th Dist.). Therefore, to determine if the sanction in the instant case was criminal or civil in nature, it is necessary to determine the purpose behind the sanction: was it to coerce Kenneally to obey the journal entry, or was it to punish him for a past violation? *See, Brown v. Executive 200, Inc.*, 64 Ohio St.2d at 252.

> In determining the nature of a contempt, a reviewing court is not bound to the trial court's characterization of the contempt as civil or criminal but must independently ascertain the nature of the contempt. *ConTex, Inc. v. Consolidated Technologies, Inc.*, 40 Ohio App.3d 94, 531 N.E.2d 1353 (1st Dist.1988); *In re: Guardianship of Finan*, 2014-Ohio-3572, ¶ 13, 18 N.E.3d 459 (5th Dist.).

*Id.* at ¶¶ 20-22. In the case sub judice, the trial court specifically stated that its purpose in conducting the show cause hearing was not to punish the appellant, but rather, to coerce him into complying with the order to return the funds to the Fiduciary. Thus, this matter involves indirect civil contempt. The *Wamack* Court stated that "[t]he standard of proof in a civil contempt proceeding is clear and convincing evidence," and that "'[c]lear and convincing evidence' is that evidence 'which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.' *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus." *Id.* at ¶ 26.

**{¶20}** The May 15, 2024, Judgment Entry ordering the appellant to return the $43,560.00 he paid to himself in attorney fees without first obtaining court approval was affirmed by this Court, and a discretionary appeal to the Ohio Supreme Court was not allowed. Thus, the appellant's failure to comply with the order constitutes disobedience of, or resistance to, a lawful order or judgment. The appellant's failure constitutes indirect contempt, as his conduct – that is, his failure to return the monies – occurred outside the presence of the trial court, and demonstrates a lack of respect for the court and its lawful order.[2]  Further, the trial court specifically stated in its July 16, 2025, Judgment Entry

---

[2] It is noteworthy that during the May 13, 2025, hearing the trial court suggested various options the appellant could undertake prior to the June 17, 2025, continued hearing,

that it was "reviewing the matter for indirect civil contempt." In addition, the court noted that its purpose was not to punish the appellant, but rather, to coerce him into complying with the May 15, 2024, Judgment Entry ordering him to return the $43,560.00 he took in attorney fees without prior court approval. The court ordered that, while the appellant may not be able to fully repay the monies, he could nevertheless make periodic payments in lesser amounts, and stated further that the Fiduciary could utilize all legal proceedings in aid of execution while the appellant could assert "ability to pay" protections. The ability to undertake periodic payments of lesser amounts thus enables the appellant to, in effect, purge the contempt. The trial court did not abuse its discretion or otherwise err in finding that the appellant was in indirect civil contempt for his failure to return the monies.

{¶21} The appellant has submitted a myriad of difficult to follow arguments, most of which are irrelevant to the issue at hand – that is, whether the appellant disobeyed a lawful court order when he failed to return any of the attorney fees he paid himself without first obtaining court approval. We will nevertheless attempt to address his fallacious arguments.

{¶22} In his first assignment of error, the appellant seems to argue that the May 13, 2024, hearing upon which the May 15, 2024, Entry was based is flawed because the transcript provided by the prior trial court judge differs slightly from the transcript provided by the current trial court judge. This argument is a red herring, as the appellant has conceded that he failed to return the monies. Furthermore, any minor differences that may exist between the two transcripts do not rise to the level of error, particularly since

including the filing of a motion for attorney fees. The appellant failed to file such a motion, or otherwise undertake any efforts to remedy the issue.

the May 15, 2024, decision has been affirmed by this Court and declined for review by the Ohio Supreme Court. The appellant's first assignment of error is without merit.

{¶23} The appellant argues in his second assignment of error that the trial court erred in stating in open court and in public filings that he had violated the May 15, 2024, order prior to the submission of evidence. This, too, is a nonsensical red herring, and does not rise to the level of reversible error. Statements allegedly made by the trial court, that the appellant had failed to return the monies to the estates, are statements set forth in the filings submitted by the Fiduciary. Furthermore, the appellant filed a writ of prohibition against the prior trial court judge seeking an order from this Court preventing the trial court from continuing to administer the estate, requiring the trial court judge to engage in efforts to defend herself. This Court denied the writ in *Golub v. Park,* 2024-Ohio-4559 (5th Dist.). The Ohio Supreme Court affirmed the denial in *Golub v. Werren* [3]*,* 2025-Ohio-2950. Any statements made by counsel in those proceedings were made in defense of the appellant's writ of prohibition. Furthermore, any such statements certainly do not provide a basis upon which to find error on the part of the trial court in the case sub judice. The appellant's second assignment of error is without merit.

{¶24} The appellant argues in his third assignment of error that the trial court erred in "haling" him to court on a summons and warning of criminal penalties. This argument must also fail. The appellant was advised of the motion to show cause, provided with notice of the May 13, 2025, hearing on the motion, and then advised at the May 13, 2025, hearing of his right to counsel and various ways to address the potential contempt (i.e., filing a motion for approval of attorney fees, and/or making partial payments.) The

---

[3] Judge Park was the probate court judge until December of 2024, when she retired. Judge Werren is the current probate court judge.

May 13, 2025, hearing was then rescheduled for June 17, 2025, allowing the appellant over one month to prepare. There were no violations of the appellant's fourth and fourteenth amendment rights, nor of his rights as set forth in the Ohio Constitution. Furthermore, Crim.R. 3(A) and R.C. 2935.09 do not apply to the within matter, as it involves indirect civil contempt and not criminal contempt. The appellant's third assignment of error is without merit.

{¶25} The appellant argues in his fourth assignment of error that the trial court erred in advising of potential criminal penalties and allowing counsel for the Fiduciary to "prosecute" contempt proceedings against the appellant. This argument is also a red herring, and must also fail. First, the matter entailed indirect civil contempt, not criminal contempt giving rise to criminal penalties. Second, counsel for the Fiduciary represents the interests of the Fiduciary and the estate, and properly moved for a show cause order regarding the appellant's failure to comply with the May 15, 2024, Entry ordering him to return the attorney fees taken without prior court approval. The Fiduciary is responsible for filing a final accounting and otherwise effectuating finalization of the estates, and was unable to do so due to the appellant's failure to return the monies. The appellant's fourth assignment of error is without merit.

{¶26} The appellant argues in his fifth assignment of error that the trial court erred when it prohibited him from calling witnesses and cross examining his accusers. This too must fail. While the trial court did not permit the appellant to call Attorney Laura Mills, who is counsel for the Fiduciary and filed the motion to show cause, the appellant was not prohibited from calling other witnesses in his defense. Additionally, the appellant references his lack of attendance at the April 23, 2025, status conference as evidence of the trial court's error. However, said status conference involved the court's oversight of

the estate administration generally, and the final accountings in the estates. Since the appellant had withdrawn as counsel for the Fiduciary in 2023, he had no right to attend the status conference. The appellant's fifth assignment of error is without merit.

{¶27} In his sixth and seventh assignments of error, the appellant argues that the trial court erred when it stated in open court that his social security income and IRA funds would be considered in determining the appellant's ability to return the monies to the estates. This argument must also fail. The appellant argued that he was financially unable to pay the funds back to the estates, therefore making the court's inquiry into his financial status relevant. The court did not state that the appellant would be required to utilize his social security monies and/or his IRA monies to return the attorney fees taken without prior court approval; it was simply inquiring into the appellant's financial status to determine if the appellant's financial hardship argument was viable. The appellant's' sixth and seventh assignments of error are without merit.

{¶28} The appellant argues in his eighth assignment of error that the trial court erred in not determining the amount necessary to purge the contempt. This argument, too, must fail. Clearly payment of the full amount would serve to place the appellant in compliance with the May 15, 2024, Entry. The trial court further suggested that the appellant file a motion for approval of attorney fees, which would enable the court to approve the fees taken, or at least part of the fees, and provide a way for the appellant to comply with the May 15, 2024, Entry. Finally, the trial court suggested the appellant undertake efforts to make periodic partial payments towards return of the monies. The court thus outlined various methods through which the appellant could remedy the indirect civil contempt; the appellant simply refused, and continues to refuse, to undertake any such efforts. The appellant's eighth assignment of error is without merit.

{¶29} The appellant argues in his ninth assignment of error that the trial court erred in awarding attorney fees in connection with the show cause proceedings. This too must fail. The Fiduciary's March 26, 2025, Motion contained a request for the award of attorney fees in the amount of $400.00 for one hour of time for preparation of the Motion. The appellant was on notice that attorney fees were being sought in connection with the show cause proceedings and were being sought at the rate of $400.00 per hour. The appellant was present at the May 13, 2025, hearing at which various issues relating to the potential contempt were discussed. The hearing was continued until June 17, 2025, allowing the appellant several weeks to prepare. Thus, he was on notice of, and had an opportunity to contest, the Fiduciary's request for attorney fees and the hourly rate. The appellant's ninth assignment of error is without merit.

{¶30} In his tenth assignment of error, the appellant argues that the trial court erred in awarding an amount in excess of what was sought in the Fiduciary's March 26, 2025, Motion. The court did not, however, abuse its discretion when it "awarded" the Fiduciary $43,560.00 the appellant had already been ordered to return to the estates. Nor did it abuse its discretion when it stated that statutory interest may accrue on the $43,560.00 from the July 16, 2025, Entry, or that the Fiduciary may recover costs and attorney fees associated with any potential collection activities relating to the judgment. The appellant was ordered to return the attorney fees to the estates nearly two years ago. He has failed to make any effort whatsoever towards satisfaction of the same, and has thereby interfered with the Fiduciary's ability to finalize the estates. The trial court did not err in finding the appellant in indirect contempt, and the appellant's tenth assignment of error is without merit.

{¶31} The appellant is essentially his own worst enemy. He has failed to file a motion for attorney fees to seek approval of the fees he has received, and has further failed to make any effort whatsoever to make even periodic partial payments in an effort to comply with the trial court's May 15, 2024, Entry. The appellant has the key to access relief – he simply refuses to utilize it.

## CONCLUSION

{¶32} Based upon the foregoing, we find that the appellant's assignments of error numbers one through ten are without merit and are overruled. The judgment of the Stark County Court of Common Pleas, Probate Division, is hereby affirmed.

{¶33} Costs to appellant.


By: Baldwin, P.J.

Montgomery, J. and

Gormley, J. concur.